NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-6078-11T4
                    A-6370-11T1

NEW CENTURY FINANCIAL
SERVICES, INC.,

 Plaintiff-Respondent,

v.

AHLAM OUGHLA,

 Defendant-Appellant.

_____

MSW CAPITAL, LLC,

 Plaintiff-Respondent,

v.

AZEEM H. ZAIDI,

 Defendant-Appellant.

_____

> APPROVED FOR PUBLICATION
>
> September 2, 2014
>
> APPELLATE DIVISION

Argued May 22, 2013 — Decided March 5, 2014

Before Judges Grall, Simonelli and Accurso.

On appeal from Superior Court of New Jersey,
Law Division, Special Civil Part, Hudson
County, Docket No. DC-4244-12 (A-6078-11),
and Monmouth County, Docket No. DC-4774-12
(A-6370-11).

Philip D. Stern argued the cause for
appellant (both appeals) (Philip D. Stern &
Associates, LLC, attorneys; Mr. Stern, on
the briefs).

Lawrence J. McDermott, Jr., argued the cause for respondent (both appeals) (Pressler and Pressler, L.L.P., attorneys; Mr. McDermott and Steven A. Lang, on the briefs).

John Ukegbu argued the cause for amicus curiae Northeast New Jersey Legal Services, Inc. (A-6078-11) (Northeast New Jersey Legal Services, attorneys; Mr. Ukegbu, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

In these two appeals, calendared back-to-back and consolidated here, we consider the proofs necessary for plaintiffs to prevail on summary judgment in an action to collect an assigned debt on a closed and charged-off credit card account. Plaintiffs are debt buyers. Debt buyers purchase charged-off credit card debts from the card issuers or other debt buyers and attempt to collect the debts, that is, the amount due the card issuer when it charged-off the account, or re-sell them to other debt buyers.[1] Plaintiffs obtained summary judgments against defendants on charged-off credit card debts which plaintiffs claim to have purchased from sellers who, ultimately, albeit indirectly, derived their ownership from the

---

[1] See Federal Trade Commission, The Structure and Practices of the Debt Buying Industry 11 (2013), available at http://ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf [hereinafter "Debt Buying Report"].

banks that issued the credit cards to defendants.  Defendants contend that the summary judgments were improper because plaintiffs did not submit sufficient proof of their ownership of the debts and did not offer admissible evidence of the amounts allegedly owed.

Plaintiffs suing on assigned, charged-off credit card debts must prove two things:  ownership of the defendant's charged-off debt and the amount due the card issuer when it charged off the account.  In considering whether plaintiffs established prima facie proof of their claims, we hold that:  lack of notice to the debtor of the sale of the debt does not affect the validity of the assignment; the assignment need not specifically reference defendant's name or account number and instead may refer to an electronic data file containing that information; a plaintiff need not procure an affidavit from each transferor in its chain of assignments and may instead establish prima facie proof of ownership on the basis of business records documenting its ownership; and that an electronic copy of the periodic billing statement for the last billing cycle is prima facie proof of the amount due on the account at charge off.  Applying those standards to the facts presented on the motions, we affirm one judgment and reverse the other.

A-6078-11T4

The Summary Judgment Motions

Ahlam Oughla

Plaintiff New Century Financial Services, Inc. (New Century) sued defendant Ahlam Oughla alleging that it was the owner of Oughla's Credit One Bank, N.A., account on which $723.82 was due at charge off. Oughla, representing herself, answered stating "[p]laintiff provided no documentation to support the charges alleged in the complaint, therefore defendant denies all allegations." Although each side propounded limited interrogatories as allowed in actions cognizable but not pending in the Small Claims Section, R. 6:4-3(f), neither party provided responsive answers.

New Century moved for summary judgment. In its statement of material facts, New Century stated that its predecessor in interest, Credit One, extended credit to Oughla on a specific account; that as set forth in its supporting certification, New Century had purchased that account; that the "Electronically Transmitted Information from Seller," showed that Oughla opened the account on October 25, 2007; made her last payment on March 2, 2008; and that Credit One charged off the account on October 5, 2008 with a balance due of $723.82, which constituted the principal balance New Century demanded. New Century also sought interest of $1.58 calculated at the rate specified in Rule 4:42-

11(a)(ii), not at the rate charged by Credit One when the account was active.

New Century attached what it claimed to be the bill of sale and assignment by which it acquired Oughla's debt as well as documents relating to several prior transfers of the account. Specifically, New Century attached four executed assignment documents memorializing the sale and assignment of certain charged-off credit card account receivables, purportedly described on computer files transferred therewith:  from MHC Receivables, L.L.C. (MHC Receivables) to Sherman Originator, L.L.C. (Sherman Originator); from Sherman Originator to LVNV Funding, L.L.C. (LVNV Funding); from LVNV Funding to Sherman Acquisition, L.L.C. (Sherman Acquisition); and from Sherman Acquisition to New Century.  Only one of the assignments referenced a portfolio number and none referenced Oughla's account, or indeed, any individual account.

New Century also attached an electronic copy of the final periodic account statement for "VISA Account [XXXX]" from Credit One to Oughla with the same address she noted on her answer, advising that the account was closed and scheduled to be charged off with a balance of $723.82.

Oughla filed a response to the motion and consented to disposition on the papers.  She did not dispute any of the

A-6078-11T4

particular facts New Century asserted, but contended that there was no admissible evidence of the formation of a contract between her and Credit One, or of the breach of any such contract, and no reference to her name or account number in any of the assignments. On that evidence, the judge granted New Century summary judgment in the sum of $725.40 plus costs without a statement of reasons.

Oughla retained counsel who filed a motion for reconsideration. Counsel argued that New Century did not establish its ownership of the debt or provide a proper foundation for the final periodic account statement.

New Century responded with additional proofs of its ownership of the debt. Its "business development manager," Marko Galic, certified that he participated in the transaction in which New Century purchased Oughla's debt and thus had personal knowledge of the records New Century obtained in that sale, including the assignments, a copy of the electronically-transmitted spreadsheet New Century acquired, redacted to show only the information relating to Oughla's account, and the final periodic statement Credit One issued to Oughla.

In addition, New Century provided evidence of the transfers that preceded its acquisition, the first being from Credit One to MHC Receivables. John Mazzoli submitted an affidavit stating

that he is an authorized representative for MHC Receivables, having personal knowledge of "the method and manner" by which MHC "originates, services, owns and manages VISA and MasterCard accounts." Mazzoli explained that MHC Receivables "purchases and holds VISA and MasterCard accounts" originated by Credit One, which Credit One thereafter continues to service on behalf of MHC Receivables, the legal owner. According to Mazzoli, "[t]he Agreements that transfer the accounts between Credit One and MHC are self-executing, allow for the accounts to be transferred immediately after origination, and comply with all state and federal regulations," and that "[c]ardholders receive appropriate notice of these events in accordance with all state and federal laws." Mazzoli averred that "[t]he transfer between MHC and any subsequent buyer [is] evidenced by a Purchase and Sale Agreement and corresponding Bill of Sale."[2]

The judge denied the motion for reconsideration and reaffirmed the entry of summary judgment. She was satisfied

---

[2] New Century also presented a certification from its counsel Steven A. Lang, Esq., who attached credit reports from 2008 and 2009 for Oughla that counsel's firm "obtained in another matter." We do not rely on these reports because they are plainly inadmissible hearsay. See, e.g., Cruz v. MRC Receivables Corp. 563 F. Supp. 2d 1092, 1095 (N.D. Cal. 2008) (credit reports offered to prove the accounts and amounts therein are inadmissible hearsay); Konop v. Rosen, 425 N.J. Super. 391, 402 (App. Div. 2012) (noting that hearsay within hearsay requires a separate basis for admission).

that New Century had established a prima facie case that it was the owner of the account and that Oughla was in default in the sum of $723.82 plus interest of $1.58, for a total due of $725.40. The judge found that Oughla's only defense to the motion was that she "was not satisfied" with New Century's proofs, which the judge concluded was not sufficient to defeat summary judgment.

Azeem H. Zaidi

Plaintiff MSW Capital, L.L.C. (MSW Capital) sued defendant Azeem H. Zaidi alleging that it was the owner of Zaidi's "CHASE-WAMU" account, on which $12,487.36 was due at charge off. Zaidi, representing himself, filed an answer leaving plaintiff to its proofs.

MSW Capital served Zaidi with interrogatories seeking the factual basis for any defense Zaidi claimed, to which Zaidi declined to provide responsive answers. MSW Capital also served Zaidi with requests for admissions asking whether he admitted applying for credit privileges with CHASE-WAMU; whether he made purchases or received cash advances using the account; and whether he received monthly statements. Zaidi responded without admitting or denying any of the requested admissions.

MSW Capital moved for summary judgment. In its statement of material facts, MSW Capital stated that its predecessor in

interest, CHASE-WAMU, extended credit to Zaidi, and that as set forth in the certification submitted in support of the motion, MSW Capital was the current owner of that account on which $12,487.36 was due at charge-off. MSW Capital attached copies of eighteen monthly billing statements for Zaidi's CHASE-WAMU account from August 2009 through January 2011, each addressed to Zaidi at the address indicated on Zaidi's answer.

MSW Capital supported the motion with a certification of its managing director, Lawrence A. Whipple, Jr., who claimed both personal knowledge of MSW Capital's "books and business" and authority to make the certification on its behalf. Whipple certified that MSW Capital "is the owner by purchase of [Zaidi's] defaulted CHASE-WAMU Account" on which there is due the sum of $12,487.36.[3]

Zaidi, through counsel, opposed MSW Capital's motion and cross-moved for summary judgment. He denied MSW Capital's

---

[3] Whipple further certified that MSW Capital's records are maintained electronically, and he attached a "Computer Generated Report of Financial Information From 1/31/11 to 04/19/12," created by MSW Capital for Zaidi's account. We do not rely upon this report, which was apparently intended to conform to the requirements of Rule 6:6-3(a), because it cannot qualify as a business record under N.J.R.E. 803(c)(6). The case caption and docket number on the document make clear it was prepared in anticipation of litigation and thus not kept in the normal course of business. See State v. Berezansky, 386 N.J. Super. 84, 94 (App. Div. 2006), certif. granted, 191 N.J. 317 (2007), appeal dismissed, 196 N.J. 82 (2008).

claims based on its "failure to provide proof that it owns the alleged account and . . . that I am indebted to [MSW Capital] in any amount." Zaidi certified that prior to his receipt of the complaint he had never heard of MSW Capital and never received notice "that an account between 'CHASE-WAMU' and me had been transferred, sold or assigned."

MSW Capital responded with a supplemental certification from Whipple, as well as new certifications from its attorneys. Whipple explained, as he had not in his original certification, that his job responsibilities required that he be familiar with MSW Capital's "records and the manner in which those records are recorded and maintained," and that he personally participated in MSW Capital's acquisition of Zaidi's charged-off "CHASE-WAMU account number [XXXX]." According to Whipple, MSW Capital acquired Zaidi's charged-off CHASE-WAMU account on July 18, 2011 by bill of sale and assignment from Main Street Acquisition Corp., (Main Street) a true copy of which he attached. The bill of sale and assignment recites that:

> For value received and subject to the terms and conditions of the [Purchase and Sale Agreement, dated as of April 15, 2011], the Seller [Main Street] hereby transfers, sells, assigns, conveys, grants, bargains, sets over and delivers to the Purchaser [MSW Capital, L.L.C.], and to the Purchaser's successors and assigns, all of the Seller's rights, title and interest in and to the Purchased Accounts and any claims arising

> out of the Purchased Accounts described in the Agreement and contained in the Sale File provided to the Purchaser on July 18, 2011.
>
> This Assignment is executed without recourse and without representations or warranties including, without limitation, warranties as to collectability, except as otherwise provided in the Agreement.

Whipple certified that Main Street also provided MSW Capital with a copy of the assignment by which Main Street acquired Zaidi's charged-off account from Chase, a true copy of which he attached.

Whipple attested to the electronic information Main Street provided MSW Capital regarding Zaidi's charged-off CHASE-WAMU account, including the account number, that the account was opened on August 16, 2004, that the last payment on the account had been made on June 7, 2010 in the amount of $300.00, that Chase Bank charged off the account on January 31, 2011, that the balance due at charge-off was $12,487.36, Zaidi's address in Morganville, New Jersey, as well as Zaidi's date of birth and social security number which Whipple did not list but represented would be made available to the court at its request. Finally, Whipple identified, and attached as true copies, the eighteen periodic statements he obtained from Main Street for Zaidi's charged-off account, each of which stated "This Statement is a Facsimile — Not an original."

MSW Capital's counsel, Steven A. Lang, submitted a certification countering Zaidi's sworn statement that he had never heard of MSW Capital before being served with the complaint. Lang attached a copy of a demand letter his office had sent to Zaidi before the complaint was filed, informing him that his CHASE-WAMU account had been purchased by MSW Capital and placed with the firm for collection. Lang also explained that in September 2008, the Federal Deposit Insurance Corporation (FDIC) seized Washington Mutual Bank (WAMU), thereafter placing the bank into receivership and eventually selling "substantially all" of its assets to JPMorgan Chase & Co., the parent of Chase Bank USA, N.A., the firm's credit card issuing bank in accordance with JPMorgan Chase & Co.'s public filings with the Securities and Exchange Commission. Lang attached copies of those filings to his certification.

The trial judge reviewed all of the evidence submitted by MSW Capital and the objections to that evidence from Zaidi, and determined that the billing statements satisfied the requirements of Rule 6:6-3(a), and LVNV Funding, L.L.C. v. Colvell, 421 N.J. Super. 1 (App. Div. 2011), and that Whipple's certification constituted sufficient proof to establish that Zaidi's charged-off credit card had been transferred to MSW Capital. The judge noted that Zaidi had not offered anything to

dispute his responsibility for the account, the accuracy of the amount due at charge-off, or his receipt of the billing statements. Finding no material fact in dispute and that MSW Capital had proved its claim, the judge entered summary judgment for MSW Capital in the amount of $12,487.36 plus costs.

Both defendants filed timely notices of appeal. This court subsequently granted the motion of Northeast New Jersey Legal Services, Inc. to appear as amicus curiae and to argue in support of Oughla's appeal.

Brief Overview of the Debt Buying Industry

Because defendants and amicus rely on reports of the Federal Trade Commission (FTC), a federal agency responsible for enforcing the Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692, issued after the FTC assessed the effect of debt buying on the collection of consumer debt and its effect on consumers, we begin with a brief background of the debt buying industry.

The FTC undertook its studies in response to the rapid increase in debt buying over the last two decades. Although acknowledging that debt buying reduces the losses creditors incur in providing credit, thereby helping to keep the price of credit low and ensuring its wide availability, the FTC was concerned that the re-selling of debts could lead to debt buyers having insufficient or inaccurate information about the debts

they are trying to collect, resulting in debt buyers attempting to collect from the wrong debtor or more than the debtor owes. Federal Trade Commission, Debt Buying Report, supra, at 11, 29-30, Federal Trade Commission, Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration i-ii (2010) available at http://ftc.gov/os/2010/07/debtcollectionreport.pdf, [hereinafter "Debt Collection Report"]; Federal Trade Commission, Collecting Consumer Debts: The Challenges of Change, A Workshop Report 1 (2009) available at http://ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf [hereinafter "Debt Collection Workshop Report"].

The debt buying business apparently traces its origin to the savings and loan crisis of the late 1980s when the Resolution Trust Corporation auctioned off billions in unpaid loans owed to failed thrifts. Debt Buying Report, supra, at 12. The success of such sales led other owners of delinquent debt, most notably the banks constituting the largest credit card issuers, to eventually follow suit. Id. at 12-13.

Federal regulations require banks issuing credit cards to charge off, that is declare uncollectible, credit card debts by

A-6078-11T4

the end of the month in which they become one hundred and eighty days past due.  Final Notice of Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903 (June 12, 2000).  Although banks are prohibited from counting charged-off debts toward their capital requirements, the debts remain assets which the banks can continue to try to collect or sell for cash.  Debt Buying Report, supra, at 13 n.58.   The Government Accountability Office reported in a 2009 study that five of the six largest credit card issuers sold at least some of their charged-off debt to debt buyers.[4]

The FTC found that credit card issuers typically bundle thousands of charged-off accounts into portfolios sharing common features, such as the amount of time that has passed since a payment was made on the account.[5]  Debt Buying Report, supra, at 17.  Debt buyers purchasing the portfolios from the credit card issuers sometimes resell the original portfolios or repackage the debts into new portfolios.  Id. at 19.

---

[4] U.S. Gov't Accountability Office, GAO-09-748, Credit Cards: Fair Debt Collection Practice Act Could Better Reflect the Evolving Debt Collection Marketplace and Use of Technology 25 (2009), available at http://www.gao.gov/assets/300/295588.pdf [hereinafter "GAO Report"].

[5] Zaidi's account appears to have been included in a portfolio of 8,842 charged-off accounts that Chase assigned to Main Street.

A-6078-11T4

All of the information the debt buyers receive about the charged-off accounts within a purchased portfolio is transmitted electronically.  Debt collection is no longer based on paper transactions.  The FTC notes that technological innovations over the past thirty years, such as document imaging and electronic database management systems, have dramatically enhanced the ability of creditors and debt collectors to obtain, store, and transfer data about account holders and their debts.  Debt Collection Workshop Report, supra, at 17.

Upon purchase of a portfolio, the debt buyer receives a "data file," typically one or more electronic spreadsheets containing information such as the name, street address, home telephone number, date of birth, and social security number for each debtor, along with the credit card account number, the amount due at charge-off, the date the debtor opened the account, the date of last payment, and the date of charge-off. Debt Buying Report, supra, at 20, 34-35.  Both plaintiffs in these cases represented that the information they acquired on defendants' charged-off debts was through the transfer of electronic data files.  In addition to the data file, buyers of charged-off accounts also sometimes acquire electronic documentation or "media," typically account statements, at the time of sale or the right to request such from the seller for a

A-6078-11T4

limited period of time, and often for a fee.[6]  Id. at 26-28, 39-40.

The debts within these portfolios are sometimes sold multiple times pursuant to separate purchase and sale agreements in which sellers generally disclaim all representations and warranties regarding the accuracy of the information about the individual debts.  Id. at 25.  Defendants and amicus contend that because plaintiffs are suing on purchased debt of which they have no personal knowledge, the absence of a warranty leaves plaintiffs unable to prove that they have sued the right defendant for the correct amount.  The FTC acknowledges, however, that its study did not permit any conclusions as to the prevalence of errors or inaccuracies in the information about the debts transferred in these portfolios.[7]  Ibid.

Against this backdrop, we turn to consider the matters before us.

---

[6] Significantly, the FTC found that original sellers typically had no obligation to provide copies of documents to purchasers of resold debt; instead, those purchasers had to channel their requests upstream to the original purchaser for transmission to the issuer.  Debt Buying Report, supra, at 27-28.  This was the manner in which MSW acquired Zaidi's Chase account statements.

[7] The FTC speculates that one reason debt sellers may not warrant the account information on the debts they sell is the cost to a seller in assessing a warranty claim, that is in trying to determine if the information it supplied to a buyer about a debt was inaccurate or whether the debt simply proved uncollectible for the buyer.  Debt Buying Report, supra, at 25, n.108.

A-6078-11T4

Standing

We first dispose of defendants' arguments that plaintiffs failed to establish standing in the trial court. Defendants assert that "the chain of assignment must be addressed before deciding other substantive issues" because "[w]hen there is insufficient proof of assignment, the action is not justiciable."

We need not engage in an extended discussion on this point. We agree with defendants that plaintiffs must prove that they own the charged-off credit card debts on which they sue, whether one characterizes it as standing to sue or an essential element of proof on an assigned claim. See Sullivan v. Visconti, 68 N.J.L. 543, 550 (Sup. Ct. 1902), aff'd, 69 N.J.L. 452 (E. & A. 1903); Triffin v. Somerset Valley Bank, 343 N.J. Super. 73, 79-82 (App. Div. 2001); Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 599-600 (App. Div. 2011). We disagree that, in these Special Civil Part actions, the parties must first litigate ownership of the debt before any other matter can be addressed. Such matters are left to the sound discretion of the trial judge to be exercised in light of any motions filed by the parties.

As we noted at the outset of this opinion, plaintiffs suing on assigned credit card debts must prove that they own the debt

and the amount due. The proofs on these issues are generally straightforward and proceed in tandem. Requiring them to be addressed separately would seem to confound the purposes of the Special Civil Part Rules, which are designed to control costs and promote the expeditious resolution of claims under $15,000. Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 143-44 (1999).

The issue is only important here because defendants have taken the position that plaintiffs must prove they own the debt before defendants can be required to participate in discovery. Both defendants refused to answer basic discovery on the basis that plaintiffs had not proved that they owned the debts sued upon. We think it obvious that defendants have the same obligations as all other litigants in our courts to answer discovery fully and forthrightly. Dewalt v. Dow Chem. Co., 237 N.J. Super. 54, 60 (App. Div. 1989).

Although information as to ownership of the debt would almost certainly be confined to plaintiffs, defendants likely possess relevant information about the credit card account. Our rules allow litigants in civil litigation to prove claims and defenses through discovery and admissions obtained from adverse parties. See Seiden v. Allen, 135 N.J. Super. 253, 255-56 (Ch. Div. 1975). Defendants cannot shield themselves from legitimate

discovery in these collection matters by asserting plaintiffs' lack of standing.

## Proof of Assignments

The parties and amicus agree that the assigned credit card debts on which plaintiffs sue constitute choses in action arising on contract, which are assignable pursuant to N.J.S.A. 2A:25-1. Our law does not dictate any precise formula for such assignments. Sullivan, supra, 68 N.J.L. at 550. All that is required is evidence of the intent to transfer one's rights and a description of the intangible right being assigned sufficient to make it readily identifiable. K. Woodmere Assocs., L.P. v. Menk Corp., 316 N.J. Super. 306, 314 (App. Div. 1998) (citing 3 Williston on Contracts § 404 (Jaeger ed. 1957); Transcon Lines v. Lipo Chem., Inc., 193 N.J. Super. 456 (Cty. Dist. Ct. 1983)).

Although an assignee will ordinarily notify a debtor promptly of the assignment, as the debtor is discharged to the extent of his payments to the assignor prior to notice, the lack of notice to the debtor does not affect the validity of the assignment.[8] Moorestown Trust Co. v. Buzby, 109 N.J. Eq. 409,

---

[8] We do not view Tirgan v. Mega Life & Health Ins., 304 N.J. Super. 385 (Law Div. 1997), on which defendants rely, to be to the contrary. Notice was not at issue in that case, which involved a patient's assignment of his rights under an insurance contract to his physician. Id. at 391. The Law Division's statement that "[t]o be effective, . . . the assignment must be

(continued)

411 (Ch. 1932) (creditors may dispose of a debt as they choose including by assigning it to another, notice of any assignment to the debtor "adds nothing to the right or title transferred"). Notice simply charges the debtor with the duty to pay the assignee. <u>Russel v. Fred G. Pohl Co.</u>, 7 <u>N.J.</u> 32, 40 (1951); <u>Spilka v. S. Am. Managers, Inc.</u>, 54 <u>N.J.</u> 452, 462 (1969); <u>N.J.S.A.</u> 12A:9-406(a).

Accordingly, we reject defendants' arguments that lack of notice of the assignments to the account holders is fatal to plaintiffs' claims. Because it does not involve a dispute over a material fact, we likewise reject Zaidi's argument that the factual dispute about his notice of the assignment precluded entry of summary judgment against him.

Plaintiffs insist that because our law has not historically required documentary evidence to prove ownership, ownership of the assigned claims may be proved by testimony alone. That assertion seems to us beside the point, as plaintiffs in these cases moved for summary judgments relying on written assignments.[9] Accordingly, our review is of the certifications submitted on the motions in support of their claims. <u>See</u> <u>Ford</u>,

_____

(continued)
noticed to the obligor," plainly refers only to the obligor's duty to pay the assignee upon proper notice. <u>Id.</u> at 390.
[9] The exception in Oughla's case regarding the first link in MSW Capital's chain of ownership is discussed <u>infra</u>.

supra, 418 N.J. Super. at 599-600.  We review the grant of summary judgment using the same standard as the motion judge. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). Thus, we must determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Where a motion for summary judgment is based on facts either not of record or not judicially noticeable, Rule 1:6-6 allows the court to "hear it on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify and which may have annexed thereto certified copies of all papers or parts thereof referred to therein."  Hearsay may only be considered if admissible pursuant to an exception to the hearsay rule.  Jeter v. Stevenson, 284 N.J. Super. 229, 233-34 (App. Div. 1995).  In evaluating a summary judgment record involving a challenge to the competency of affidavits on which the trial court relied, we review the evidentiary question for abuse of discretion and the court's legal determination de novo.  Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010).

The central question presented with regard to the assignments is whether plaintiffs have submitted competent evidence demonstrating "the full chain of the assignment of the claim[s]." R. 6:6-3(a); Colvell, supra, 421 N.J. Super. at 6 (noting agreement that Rule 6:6-3(a) provides a guide to the proofs necessary for summary judgment in credit card collection cases). We reviewed the requirements for affidavits purporting to establish a party's ownership of an assigned mortgage debt in Ford, supra, 418 N.J. Super. at 597-98. Those principles apply equally here. An affiant must aver that the facts presented are on personal knowledge, identify the source of such knowledge, and must properly authenticate any certified copies of documents referred to therein and attached to the affidavit or certification. Id. at 599-600. We are satisfied that MSW's proofs on its motion were sufficient to establish its ownership of Zaidi's debt. New Century's proofs, however, could not support summary judgment in Oughla's case.

In Oughla's case, New Century submitted two certifications from its business developer manager, Marko Galic. Galic certified that he was familiar "with the business and records" of New Century, was authorized to make the certifications on its behalf and did so of his own personal knowledge. Galic explained that he had personally participated in the transaction

23

in which New Century purchased Oughla's account from Sherman Acquisition and he attached "true copies" of the bill of sale and assignment and the information electronically provided to New Century regarding Oughla's account at the time of sale.

The attached bill of sale and assignment identified Sherman Acquisition as the assignor and New Century as the assignee and states that the assignor conveys all of its interest in certain charged-off receivables described in an attached appendix and referred to as "Charged-off Accounts" in a purchase and sale agreement between assignor and assignee of the same date. The document is signed on behalf of Sherman Acquisition by John Mazzoli, Director, and witnessed by another officer. Also attached to Galic's certification are five pages of a spreadsheet with information relating to Oughla's account with Credit One and a periodic statement from Credit One to Oughla noting that the account is closed and scheduled to be charged off.

Finally, Galic attaches true copies of the remaining three assignments transferring Oughla's Credit One account from MHC Receivables to Sherman Originator, from Sherman Originator to LVNV Funding, and from LVNV Funding to Sherman Acquisition, from whence it was transferred to New Century.

The Galic certifications plainly do not suffer from the inadequacies of the certifications presented in Ford. Galic identifies his position with New Century and describes the basis of his knowledge; he personally participated in the transaction in which New Century acquired Oughla's Credit One account. Galic certified that the attached assignments were true copies of the ones provided to New Century by its assignor Sherman Acquisition. Nothing further was required to authenticate them under N.J.R.E. 901. See Celino v. Gen. Accident Ins., 211 N.J. Super. 538, 544 (App. Div. 1986). Although defendants assert that the assignments are not admissible because they refer to agreements and appendices not attached, they cite no case for that proposition and fail to explain how such documents are relevant to the issues in dispute.

Defendants note that none of the assignments refers specifically to Oughla's Credit One account. The point is undisputed. Galic certifies, however, that Oughla's account was among the charged-off accounts included in the assignments and acquired by New Century in the transaction, as evidenced by the electronic spreadsheet information transferred to New Century, which he attached to his certification.

As an assignment needs no particular form and requires only so much of a description of the intangible assigned to make it

readily identifiable, K. Woodmere Assocs., supra, 316 N.J. Super. at 314, we agree with the trial judge that the assignments need not specify each account transferred to effectively transfer accounts included in an accompanying electronic file. The key is the intent of the assignor to transfer specific accounts. Ibid. That intent is gleaned from the documents themselves and surrounding circumstances. Id. at 315-16; see also Sullivan, supra, 68 N.J.L. at 546-47 (acknowledging appropriate use of parol evidence to confirm identity of the thing assigned). Accordingly, we conclude that New Century's certifications properly authenticate the assignment documents and electronically-transmitted information evincing a proper chain of assignments of Oughla's Credit One account from MHC Receivables through to New Century.

There is, however, no document evidencing the first link in New Century's assignment chain, the transfer of Oughla's account from the card issuer, Credit One, to MHC Receivables. New Century asserts that "[t]here are no documents from Credit One in the chain because the account was not owned by Credit One." New Century further explains with reference to Mazzoli's certification, that the "accounts are originated by Credit One and then sold, while live, to MHC Receivables, Inc.[,] Credit One Bank acted thereafter only as the account servicer."

We cannot agree that because the credit card accounts are originated by Credit One and assigned to MHC Receivables while the accounts are still active, that no proof of assignment is necessary.[10] New Century's assertion that Credit One did not own the account appears at direct odds with Mazzoli's certification that MHC Receivables "purchases and holds" Visa and MasterCard accounts "originated by Credit One."

Further, we note that Mazzoli's affidavit discussing MHC Receivables is markedly less clear than the Galic certifications. Instead of explaining his position with MHC Receivables and describing the source of his knowledge, Mazzoli says only that as "authorized representative" for that entity, he has "personal knowledge" of how it "originates, services, owns and manages Visa and MasterCard accounts." The affidavit neither reveals his position, if any, with MHC Receivables, nor the source of his knowledge of this aspect of its operations. See Ford, supra, 418 N.J. Super. at 599-600. The Mazzoli affidavit on behalf of MHC Receivables raises more questions than it answers and thus does not provide sufficient proof of

---

[10] This situation is different from a scenario in which a successor bank has acquired active credit card accounts through acquisition of another bank. See Garden State Bank v. Graef, 341 N.J. Super. 241, 245-46 (App. Div. 2001), and our discussion of this point, infra at 33.

Credit One's transfer of Oughla's account to MHC Receivables, the first link in New Century's chain of assignments. Ibid.

Accordingly, the summary judgment against Oughla must be reversed because New Century did not establish the full chain of ownership of its claim. While Mazzoli's affidavit is not sufficient to establish the transfer of Oughla's charged-off Credit One account to MHC Receivables, we note that he asserts that Credit One cardholders are noticed of the transfer of their accounts, thereby suggesting that proof of MHC Receivables' ownership of Oughla's account may be established in ways other than production of an assignment. We express no opinion on the method by which New Century may prove MHC Receivables' ownership of Oughla's account on remand. It suffices to say that it must be established by admissible evidence presented by affidavit of a witness competent to testify. Ford, supra, 418 N.J. Super. at 599-600.

We also acknowledge that the Oughla matter was within the cognizance of the Small Claims Section of the Special Civil Part where the rules of evidence may be relaxed. R. 6:1-2(a)2, 6:11; N.J.R.E. 101(a)(2)(A), see also Penbara v. Straczynski, 347 N.J. Super. 155, 158 n.1, 162-63 (App. Div. 2002); Blaisdell Lumber Co. v. Horton, 242 N.J. Super. 98, 101 (App. Div. 1990). While we are of the view that critical facts must be proved and not

merely assumed, notwithstanding the lack of formality in the Small Claims Section, <u>Triffin v. Quality Urban Hous. Partners</u>, 352 <u>N.J. Super.</u> 538, 543 (App. Div. 2002), we express no view of the form those proofs may take and whether relaxation of the rules of evidence might be appropriate under the circumstances.[11]

In Zaidi's case, MSW Capital proved its chain of assignments of Zaidi's charged-off account through the Whipple and Lang certifications. Whipple's certifications suffice to establish his knowledge of MSW's records and authenticate the assignment from Main Street to MSW Capital transferring Zaidi's charged-off account. <u>See</u> <u>Ford</u>, <u>supra</u>, 418 <u>N.J. Super</u> at 599-600. Whipple certifies that he is the managing director of MSW Capital and that his job responsibilities require his familiarity with "MSW's records and the manner in which those records are recorded and maintained." Further, Whipple certifies that he personally participated in MSW Capital's acquisition of Zaidi's charged-off account which MSW Capital acquired by way of bill of sale and assignment, a true copy of which he attached to his certification. The bill of sale and assignment provides that Main Street assigns to MSW Capital all

---

[11] We reject defendants' contention that New Century may not avail itself of the relaxation rule because it is intended to assist self-represented parties. By its terms, the rule applies to all parties in matters within the cognizance of the Small Claims Section. <u>See</u> <u>N.J.R.E.</u> 101(a)(2)(A).

of Main Street's rights to the "purchased accounts" described in a certain purchase and sale agreement and "contained in the sale file" provided to MSW Capital.

Whipple also attached a true copy of the bill of sale MSW Capital was provided by Main Street evidencing Main Street's assignment of the account from Chase. That document references the transfer of 8,842 accounts from Chase Bank to Main Street "described in the Final Data File, entitled (Account's Primary File Name) attached hereto and made part hereof for all purposes" pursuant to the credit card account purchase agreement between Chase Bank and Main Street.

In addition to raising objections to the failure to attach the referenced purchase agreements to the assignments and the lack of any specific mention of Zaidi's account which we have already rejected, Zaidi maintains that MSW Capital had to produce an affidavit from each of its predecessors authenticating the assignment each provided to its transferee for the entire assignment chain. We disagree.

We reject the claim that a separate affidavit is required from each transferor authenticating each assignment in the chain. Third-party documents evidencing ownership, such as those represented by these assignments, are examples of business records of one business transferred on sale and incorporated in

the purchaser's records to document proof of ownership of the thing transferred.  See, e.g., Stott v. Greengos, 95 N.J. Super. 96, 99-100 (App. Div. 1967) (stock sale confirmation sheets); State v. Mazowski, 337 N.J. Super. 275, 292 (App. Div. 2001) (pawnshop receipts); K & K Enters. Inc. v. Stemcor USA Inc., 954 N.Y.S.2d 512, 513 (App. Div. 2012) (bills of lading).  So long as the proponent of the documents can satisfactorily attest to the circumstances under which it acquired the documents on which it relies, the documents should be admissible as business records under N.J.R.E. 803(c)(6).  See Hahnemann Univ. Hosp. v. Dudnick, 292 N.J. Super. 11, 17-19 (App. Div. 1996).

Finally, Zaidi contends that even assuming that the assignments included in the summary judgment record were properly admissible, MSW Capital, like New Century, cannot prove the first link of the assignment chain, here the transfer of Zaidi's account from WAMU to Chase.  We are satisfied that the trial judge did not abuse his discretion in concluding otherwise.  Estate of Hanges, supra, 202 N.J. at 383-84.

MSW Capital offered the certification of its counsel Lang to prove that the FDIC had taken over WAMU and subsequently sold all of its assets to Chase.  Lang attached publicly available documents of Chase's filings with the Securities and Exchange Commission and the FDIC noting the FDIC's receivership of WAMU

31

and sale of its assets to Chase.  While Zaidi contends that those filings are not the proper subject of judicial notice under N.J.R.E. 201(a) because the documents are not "findings" of those agencies, the FDIC's takeover of WAMU and sale of its assets to Chase would appear a proper subject of judicial notice under N.J.R.E. 201(a) or (b) as evidenced by the many state and federal courts that have taken judicial notice of those very facts.  See, e.g., Carswell v. JPMorgan Chase Bank, N.A., 500 Fed. App'x. 580, 583 (9th Cir. 2012); Arguenta v. J.P. Morgan Chase, 787 F. Supp. 2d 1099, 1101-04 (E.D. Cal. 2011); Shirk v. JPMorgan Chase Bank, N.A. (In re Shirk), 437 B.R. 592, 596 n.1 (Bankr. S.D. Ohio 2010); Stewart v. JPMorgan Chase Bank, N.A. (In re Stewart), 473 B.R. 612, 618 n.2 (Bankr. W.D. Pa. 2012), aff'd, 2013 U.S. Dist. LEXIS 111516;); Scott v. JPMorgan Chase Bank, N.A., 154 Cal. Rptr. 3d 394, 401-09 (Ct. App. 2013), modified 2013 Cal. App. LEXIS 280, rev. denied, 2013 Cal. LEXIS 4861.

Although we think the trial court could have taken judicial notice of the FDIC's transfer of WAMU's assets to Chase, thus establishing the first link in MSW Capital's chain of assignments, it was not necessary for the court to have done so. While Zaidi's account may have originated with WAMU, the periodic account statements included in the summary judgment

record document credit card transactions between Zaidi and Chase. Accordingly, if those account statements are properly admissible then no further proof of Chase's assumption of Zaidi's account was necessary. The account statements would establish a direct contractual relationship between Zaidi and Chase. See Novack v. Cities Serv. Oil Co., 149 N.J. Super. 542, 548 (Law Div. 1977) (noting use of a credit card constitutes acceptance of the offer of credit in accordance with its terms), aff'd, 159 N.J. Super. 400 (App. Div.), certif. denied, 78 N.J. 396 (1978). We turn to those periodic account statements now.

Admissibility of the Account Statements

Defendants contend that even if plaintiffs could prove that they owned the debts on which they sued, their proofs on the motions for summary judgment were insufficient to establish the original creditors' contract claims. Specifically, they contend that the account statements on which plaintiffs relied to establish the amounts due and owing were hearsay statements without foundation and thus not competent evidence.[12] We disagree.

---

[12] We reject defendants' contention that plaintiffs needed to present the cardholder agreements in order to prove the contracts giving rise to the debts on which they sued. While production of the cardholder agreement would be required in a suit in which the terms of the agreement were in dispute, no such dispute exists in these cases. Plaintiffs' claims are for

(continued)

Plaintiffs offered the monthly credit card statements as business records under N.J.R.E. 803(c)(6).  That rule operates to except from the hearsay rule

> A statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.
>
> [N.J.R.E. 803(c)(6).]

The purpose of the business records exception is to broaden admissibility of relevant evidence based on principles of necessity and trustworthiness.  Liptak v. Rite Aid, Inc., 289 N.J. Super. 199, 219 (App. Div. 1996).  As the Supreme Court explained in describing the rule's evolution:

> It took a long time for the courts to recognize that business conditions and methods demanded relaxation of the strict rules of evidence which banned a merchant's books from lawsuits as self-serving hearsay.

(continued)
a sum certain, the balance due on the periodic statement for the last billing cycle; they do not seek interest or attorneys fees at the contract rates.  See Chase Bank U.S., N.A. v Staffenberg, 419 N.J. Super. 386, 388 n.1 (App. Div. 2011) (production of cardholder agreement unnecessary where counsel fees awarded as taxed costs pursuant to N.J.S.A. 22A:2-42).

Adoption of the shopbook rule stemmed from a realization that mercantile and industrial life is essentially practical, that what is the final basis of calculation, reliance, investment, and general confidence in every business enterprise may ordinarily be resorted to in proof of the main fact, and that what the common experience of man relies upon ought not to be summarily discredited.

[Mahoney v. Minsky, 39 N.J. 208, 217 (1963).]

The Court quoted Professor Wigmore

The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples . . . .  In short, Courts must here cease to be pedantic and endeavor to be practical. 5 Wigmore, Evidence (3d ed. 1940), § 1530, p. 379.

[Ibid.]

The requirements for admitting evidence pursuant to

N.J.R.E. 803(c)(6) are now well-established.

In order to qualify under the business record exception to the hearsay rule, the proponent must satisfy three conditions: "First, the writing must be made in the regular course of business. Second, it must be prepared within a short time of the act, condition or event being described. Finally, the source of the information and the method and circumstances of the preparation of the

writing must justify allowing it into
evidence."

> [State v. Sweet, 195 N.J. 357, 370 (2008)
> (quoting State v. Matulewicz, 101 N.J. 27,
> 29 (1985)), cert. denied, 557 U.S. 934, 129
> S. Ct. 2858, 174 L. Ed. 2d 601 (2009).]

There is no requirement that the foundation witness possess any
personal knowledge of the act or event recorded.  State v.
Martorelli, 136 N.J. Super. 449, 453 (App. Div. 1975), certif.
denied, 69 N.J. 445 (1976).  Further, N.J.R.E. 803(c)(6) follows
its federal counterpart, Fed. R. Evid. 803(6), such that

> documents may properly be admitted "as
> business records even though they are the
> records of a business entity other than one
> of the parties, and even though the
> foundation for their receipt is laid by a
> witness who is not an employee of the entity
> that owns and prepared them."

> [Hahnemann, supra, 292 N.J. Super. at 17
> (quoting Saks Int'l, Inc. v. M/V "Export
> Champion", 817 F.2d 1011, 1013 (2d Cir.
> 1987) (citation omitted)).]

Acknowledging in Hahnemann that computers had "become part of
everyday life," now "universally used and accepted," we
specifically disapproved "the application of special evidentiary
requirements for computer-generated business records."  Id. at
15-16.  Instead, we held that:

> A witness is competent to lay the foundation
> for systematically prepared computer records
> if the witness (1) can demonstrate that the
> computer record is what the proponent claims
> and (2) is sufficiently familiar with the

> record system used and (3) can establish
> that it was the regular practice of that
> business to make the record. If a party
> offers a computer printout into evidence
> after satisfying the foregoing requirements,
> the record is admissible "unless the sources
> of information or the method, purpose or
> circumstances of preparation indicate that
> it is not trustworthy."
>
> [Id. at 18 (citation omitted) (quoting
> N.J.R.E. 803(c)(6)).]

Applying those principles in Garden State Bank v. Graef, supra, 341 N.J. Super. at 245, we held that an employee of a successor bank could certify on summary judgment to the loan history printouts of transactions of its predecessor because the employee's position rendered him sufficiently familiar with the record system used to allow him to establish that it was the regular practice of the predecessor bank to make the record. Acknowledging "the practicality of bank acquisitions, as a result of which older records may be lost or destroyed," we held that the records were sufficient to satisfy the successor bank's prima facie showing of what it claimed was due on the outstanding loan, notwithstanding that the records did not itemize all payments made since the inception of the obligation. Id. at 246. We reasoned that "[t]he printouts are admissible because they 'appear[] perfectly regular on [their] face and as having been issued in the regular course of business prior to

the inception of any controversy between the parties.'" Ibid. (quoting Mahoney, supra, 39 N.J. at 213).

The same is true of the credit card statements included in the summary judgment record here. Plaintiffs submitted certifications by employees having personal knowledge of the books and records of plaintiffs and the transactions whereby plaintiffs acquired the charged-off debts on which they sued. The employees certified that they acquired the account statements attached to their certifications as part of the purchase of the charged-off debts. The employees certified that the account statements were true copies and reflected amounts due their predecessors as of the final billing cycle.

Although defendants assert that there was no explanation of the transactions and credits reflected on the account statements, the process is familiar to anyone who has ever paid a credit card bill. See State v. Swed, 255 N.J. Super. 228, 239 (App. Div. 1992) (noting widespread familiarity with the process whereby meter readers enter readings into hand-held computers resulting in the monthly statements received by customers of PSE&G). These account statements are the types of documents our courts have long accepted as business records excepted from the hearsay rule under N.J.R.E. 803(c)(6). See Sears, Roebuck & Co. v. Merla, 142 N.J. Super. 205, 207-08 (App. Div. 1976)

(discussing admissibility of such records under prior <u>Evid. R.</u> 63(13)); Biunno, Weissbard & Zegas, <u>Current N.J. Rules of Evidence</u>, comment 2 on <u>N.J.R.E.</u> 803(c)(6) (2013).

Even more important in the context of these actions, <u>Rule</u> 6:6-3(a) provides that "if the plaintiff's records are maintained electronically and the claim is founded on an open-end credit plan," as defined in 15 <u>U.S.C.A.</u> § 1602(i), the Truth in Lending Act, and 12 <u>C.F.R.</u> § 226.2(a)(20) (2013), Regulation Z, as these claims are, "a copy of the periodic statement for the last billing cycle, as prescribed by 15 <u>U.S.C.</u> § 1637(b) and 12 <u>C.F.R.</u> § 226.7 . . . if attached to the affidavit, shall be sufficient to support the entry of judgment."

The 1992 Report of the Special Civil Practice Committee explains the reason for the Rule.

> New Jersey law (<u>N.J.S.A.</u> 17:16c-34.1(b)) brings the kind of credit accounts at issue here within the ambit of the Truth in Lending Act. The credit accounts, such as a Sears charge or Master Card, are defined as "open end credit plans" by the Act and by the implementing regulations, commonly known as Regulation Z, adopted by the Board of Governors of the Federal Reserve System. <u>See</u> 15 <u>U.S.C.A.</u> §1602(i) and 12 <u>C.F.R.</u> §226.2(a)(20). The Act and Regulation Z require the creditor to furnish the consumer with a periodic statement for each billing cycle. 15 <u>U.S.C.A.</u> §1637(b) and 12 <u>C.F.R.</u> §226.7. In reviewing 12 <u>C.F.R.</u> §226.7 the Committee noted the extent of the information required and that subsection (k) requires that the address for

notice of billing errors be placed either on the periodic statement or on a summary statement of the consumer's billing rights included with the periodic statement.

The consumer's rights to assert claims and defenses against the issuer of the credit card and to contest billing errors are set forth in detail in 12 C.F.R. §226.12(c) and §226.13, respectively. When the credit account is established the creditor is required by 12 C.F.R. §226.6(d) to furnish the consumer with a detailed statement of those rights, in the form set forth in the appendix to Regulation Z. The creditor is also required by 12 C.F.R. §226.9 to furnish a similar statement of rights to the consumer either annually or with each periodic billing statement. The consumer is advised in these statements that he or she has 60 days from the receipt of a periodic statement containing a billing error to give the creditor notice of the error. The statements and 12 C.F.R. §226.13 set forth the detailed procedures to be followed in resolving the alleged billing error.

In this rather elaborate regulatory context, a logical inference can be drawn from a consumer's failure to assert a billing error that the new balance set forth in the periodic statement is true and correct. Accordingly, the Committee believes that it should be sufficient proof for entry of default judgment, in suits on credit accounts subject to the Truth in Lending Act, if the plaintiff attaches to the affidavit a copy of the periodic statement for the last billing cycle or a computer-generated report setting forth the financial information required to be in that statement.

[1992 Report of the Supreme Court Committee on Special Civil Practice at 33-35.]

A-6078-11T4

We have held that Rule 6:6-3(a) provides a guide to the proofs necessary for the entry of summary judgment in a suit on a credit card.[13] Colvell, supra, 421 N.J. Super. at 6. As the 1992 Report of the Civil Practice Committee makes clear, the elaborate regulatory requirements for the issuance of credit cards, including the duty of card issuers to provide detailed periodic account statements, imbues such statements with "sufficient indicia of trustworthiness and reliability normally found in business records" admitted under the Rule. Feldman v. Lederle Labs., 132 N.J. 339, 354 (1993).

The account statements meet all the foundation requirements of N.J.R.E. 803(c)(6). Although the certifications submitted by plaintiffs could have been more specific as to plaintiffs' acquisition of the account statements in connection with their purchase of defendants' charged-off credit card debts, we reject defendants' contention that more was required from plaintiffs' employees to authenticate the account statements under N.J.R.E. 901 and Hahnemann.

Defendants express significant concern over admitting electronically-transmitted credit card account statements for

_____

[13] As the account statements were before the trial courts in both cases, the concerns we raised in Colvell where such statements were not admitted are not present here. Colvell, supra, 421 N.J. Super. at 6-8.

accounts that have been assigned several times, but they have not pointed to anything in the record to suggest that the statements proffered by plaintiffs are not trustworthy.[14] Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 380 (2007) ("[t]here is no reason to believe that a computerized business record is not trustworthy unless the opposing party comes forward with some evidence to question its reliability. Hahnemann[, supra, 292 N.J. Super at 18]."). It is not lost on us that plaintiffs filed their complaints and summary judgment motions electronically in the Special Civil Part, and that the judges entered their orders granting the motions in the Judiciary Electronic Filing and Imaging System (JEFIS), where they are maintained in electronic case jackets. See Notice to the Bar: Mandatory Electronic Filing in the Special Civil Part of the Law Division of the New Jersey Superior Court — Phase Two 1-2 (2010), available at http://www.judiciary.state.nj.us/

---

[14] Zaidi contends that the legend "This Statement is a Facsimile — Not an Original," on the account statements, provides yet another reason for not admitting them, relying on Am. Express Travel Related Servs. v. Vinhee (In re Vee Vinhee), 336 B.R. 437 (B.A.P 9th Cir. 2005) (upholding trial court decision to require foundational evidence of reliability of American Express's computer hardware and software because statements proffered bore term "duplicate copy" as a result of being maintained electronically). In re Vee Vinhee is not in accord with New Jersey case law. See Carmona, supra, 189 N.J. at 380, Biunno, Weissbard & Zegas, supra comment 2 on N.J.R.E. 803(c)(6) (2013).

notices/2010/n100722.pdf. Like the litigants that appear in our courts, our courts are increasingly reliant on electronically filed and transmitted information.

Finally, defendants contend that the express disclaimers of representations and warranties in the transfer of these accounts raise sufficient reliability concerns to bar the admission of the account statements under N.J.R.E. 803(c)(6). As noted by the FTC in the reports on which defendants rely, commercial debt sellers may choose not to warrant account information for reasons other than the unreliability of that information. The disclaimers, standing alone, are simply not enough to raise serious doubt about the dependability of account statements that appear regular on their face. See Matulewicz, supra, 101 N.J. at 30. Accordingly, we conclude that the account statements submitted by plaintiffs are admissible as business records under N.J.R.E. 803(c)(6), and provide prima facie proof of the amount due on the debts. See New Century Fin. Servs., Inc. v. Dennegar, 394 N.J. Super. 595, 599 (App. Div. 2007) (concluding that the trial judge acted within his discretion in admitting monthly credit card statements on assigned claim).

The admission of the chain of assignments and account statements in Zaidi's case did not, of course, assure the entry of summary judgment. They provided only prima facie proof that

43

MSW Capital is the owner by assignment of Zaidi's Chase-WAMU charged-off credit card account on which $12,487.36 is due. Sullivan, supra, 68 N.J.L. at 546-47. But in order to stave off summary judgment, Zaidi had to come forward with evidence sufficient to create a genuine issue as to those material facts on which MSW's prima facie claim was based. Brill, supra, 142 N.J. at 529.

Zaidi failed to come forward with any evidence raising a genuine dispute as to either the assignments or the account statements. The trial court found that Zaidi had not offered anything to dispute his responsibility for the account, the accuracy of the amount due at charge-off, or his receipt of the billing statements. Accordingly, we affirm the trial court's entry of summary judgment in favor of MSW Capital.

We appreciate that the sums in these cases are often modest and defendants commonly self-represented, but that seems all the more reason to require that the plaintiffs' proofs be presented in a clear and straightforward fashion. See Quality Urban Hous. Partners, supra, 352 N.J. Super. at 543. Plaintiffs' summary judgment filings were a morass of certifications and exhibits, with multiple certifications submitted by the same person, often with exhibits consisting of certifications by other persons.

The assignments presented did not consistently identify the accounts and electronic files by the same names.

In Oughla's case, New Century submitted additional proofs in opposition to a motion for reconsideration which asserted its original proofs were inadequate. In Zaidi's case, MSW Capital submitted additional certifications in response to Zaidi's cross-motion for summary judgment. We reject defendants' contention that the judges erred in considering those additional certifications, such matters are left to the sound discretion of the trial judge. Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310-11 (App. Div.), certif. denied, 195 N.J. 521 (2008). We cannot fail to note, however, that plaintiffs' presentation of their proofs needlessly complicated these cases.

The requirements for affidavits in support of summary judgment on assigned claims are clear. R. 1:6-6; Ford, supra, 418 N.J. Super. at 599-600. Affidavits in which the affiant fails to identify specifically his position, or explain the source of his personal knowledge of the facts to which he attests, or attempts to authenticate attached documents without explaining precisely what each is and how it came into the affiant's hands should be rejected. Graef, supra, 341 N.J. Super. at 245-46. Likewise, trial courts are free to reject any

document for which there exists a genuine question of authenticity. Triffin v. Johnston, 359 N.J. Super. 543, 550-51 (App. Div. 2003). Documents appended to a brief or statement of material facts, not authenticated in a certification must be rejected. Celino, supra, 211 N.J. Super. at 544; see also Pressler & Verniero, Current N.J. Court Rules, comment on R. 1:6-6 (2014).

Although the parties raise various other points in support of their respective positions, none is of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We reverse the judgment in A-6078-11, New Century v. Oughla, and remand for further proceedings. We affirm the judgment in A-6370-11, MSW Capital v. Zaidi. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6078-11T4