**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2425-24

DAIRYLAND USA CORPORATION,
 d/b/a CHEFS' WAREHOUSE,

    Plaintiff-Respondent,

v.

FRANCOIS D'ANJOU,

    Defendant-Appellant.

_____

        Submitted November 5, 2025 – Decided November 19, 2025

        Before Judges Sumners and Chase.

        On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7531-24.

        Chatarpaul Law Firm, PC, attorney for appellant (Jay Chatarpaul, on the briefs).

        Freeman Mathis & Gary, LLP, attorneys for respondent (Daniel A. Baylson and Andrew W. Sheppard, on the brief).

PER CURIAM

Defendant Francois D'Anjou appeals from a March 10, 2025 Law Division Order granting plaintiff DairyLand Use Corporations (d/b/a Chefs' Warehouse) order to show cause ("OSC") to compel arbitration and denying his cross-motion to dismiss. We affirm.

## I.

Chefs' Warehouse supplies food products to restaurants and food-service businesses. It hired D'Anjou as an area sales manager in September 2022 and terminated his employment in May 2024.

In October 2024, D'Anjou filed a complaint against Chefs' Warehouse alleging violations of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14 and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42. In lieu of answering, Chefs' Warehouse filed a separate action, a verified complaint via OSC to stay the litigation and compel arbitration. An arbitration agreement purportedly signed by the parties was attached.

D'Anjou filed an answer and a cross-motion to dismiss, certifying that the electronic signature on the arbitration agreement was not his. He argued the signature was computer-generated, reversed the order of his names, and lacked the apostrophe present in his true signature. He submitted three examples of his handwritten signature and argued this discrepancy created a factual question.

A-2425-24

In response, Chefs' Warehouse provided an affidavit from its Human Resources ("HR") Director. The affidavit explained that employees use the Dayforce portal, which requires a unique password and multi-factor authentication, to review and sign documents via the DocuSign e-signature platform. HR had assigned the arbitration agreement through Dayforce in December 2023 and notified employees that failure to sign would result in suspension. HR received confirmation in February 2024 that D'Anjou had signed the agreement.

On March 10, 2025, by way of written opinion and corresponding order, the court granted plaintiff's OSC to compel arbitration and denied defendant's cross-motion for dismissal of the OSC.

This appeal followed.

II.

"We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law." Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020)) (holding a trial court's interpretive analysis should not be deferred to unless an appellate court finds its reasoning persuasive). In reviewing an order

compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). However, that preference is not "without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

However, the Law Division's findings of fact are not reviewed de novo: though "less deference may be afforded to factual findings made" on "motion papers, without the court hearing any testimony," findings of fact are still "entitled to deference if they are supported by substantial credible evidence in the record." In re T.I.C.-C., 470 N.J. Super. 596, 606-07 (App. Div. 2022). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011).

### III.

On appeal, D'Anjou contends the trial court erred by not holding a plenary hearing, asserting a factual dispute over his assent to the arbitration agreement. We disagree.

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'"

Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014) (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424, (App. Div. 2011)). "Simply put, without an agreement to arbitrate, there can be no arbitration." MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d 386, 397 (3d Cir. 2020) (citing Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 105, 107-08 (3d Cir. 2000)). "[A]n arbitration provision cannot be enforced against an employee who does not sign or otherwise explicitly indicate his or her agreement to it." Leodori v. Cigna Corp., 175 N.J. 293, 306 (2003).

"When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement." Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 497 (App. Div. 2021) (citing Martindale v. Sandvik, Inc., 173 N.J. 76, 83 (2002)). If a case involves "questions of fact concerning the mutuality of assent to the arbitration provision," we may remand the matter for the trial court to resolve those issues. Knight v. Vivint Solar Developer, LLC, 465 N.J. Super. 416, 427-28 (App. Div. 2020).

A-2425-24

However, a court need not always hold a plenary hearing to dispose of a summary action. Rather, a court has discretion to "try the action on the pleadings and affidavits, and render final judgment thereon," when "the affidavits show palpably that there is no genuine issue as to any material fact." R. 4:67-5. Moreover, a summary action "is not a summary judgment proceeding," so it is not subject to the summary-judgment standard. O'Connell v. N.J. Mfrs. Ins. Co., 306 N.J. Super. 166, 172 (App. Div. 1997). For that reason, the opposing party in a summary action "is not entitled to favorable inferences afforded the non-movant in a summary judgment proceeding." Ibid.

To begin with, the affidavit of Chefs' Warehouse's HR Director stated that each of their employees has their own Dayforce account for which they must create a unique password. In addition to entering that unique password, accessing Dayforce requires employees to use multi-factor authentication. The multi–factor authentication process generates a unique authentication code, which employees receive via text message or email, when they attempt to access the portal. That unique authentication code is sent to a phone number or email address chosen by the employee, not their company email account. Therefore, to view and sign the agreement, D'Anjou had to access Dayforce using his

unique password and a multi–factor authentication code that was sent to his personal email address.

Moreover, the affidavit reflected that no one at Chefs' Warehouse collects employees' passwords. They also cannot look up employee's passwords or access an employee's Dayforce account on the employee's behalf. So, if an employee forgets their password, HR's only recourse is the ability to automatically reset the employee's account and generate a temporary password that goes to the employee, who would still need to go through the multi–factor authentication process to access their Dayforce account. And this password-reset process does not allow anyone at Chefs' Warehouse to access an employee's Dayforce account unless the employee shares their temporary password and multi–factor authentication code.

The affidavit further provided that at "no point did Chefs' Warehouse access any unsigned documents on behalf of any individual employee or sign a document on any employee's behalf." Appended to the affidavit, in turn, was an email sent to all Chefs' Warehouse employees to notify them of the agreement and the need to sign it, as well as the confirmation from Dayforce that D'Anjou signed the agreement.

A-2425-24

In contrast, D'Anjou advanced only his self-serving assertions to rebut that evidence. Because the version of DocuSign used required a typed signature, not a handwritten signature, defendant's reliance on three of his signatures does not create a genuine issue of material fact pertaining to the authenticity of his signature on the arbitration agreement. Neither does the fact that the computer-generated signature had his last name first and did not include the apostrophe. The confirmation shows that D'Anjou's name had been entered into Dayforce as "Danjou, Francois"—the same as how it appeared in his DocuSign signature.

The only person with access to make signatures to the agreement was D'Anjou himself because only he possessed the password to access and change the document. This finding rests on substantial credible evidence and is unlike the scenario in <u>Knight</u>, where the plaintiff asserted, she never saw or signed the purported arbitration agreement and claimed the agreement presented in court contained "a forged signature." Absent a genuine dispute of material fact, the court correctly disposed of the matter without a plenary hearing. <u>R</u>. 4:67-5.

## IV.

D'Anjou also asserts that the court erred by considering hearsay statements in the HR director's affidavit. Specifically, D'Anjou contends that the HR director could not testify via affidavit as to how a third-party software,

such as Dayforce or DocuSign, operates.  Instead, he believes that someone was needed from Dayforce and DocuSign regarding how those programs/platforms generate signatures.  We are not persuaded.

The certification provided by Chefs' Warehouse does not contain hearsay statements regarding the operation of Dayforce and DocuSign.  Instead, the affidavit was based on personal knowledge, and the HR director was not merely repeating information she learned from another source.  The affidavit was based on her frequent firsthand use of Dayforce and DocuSign, so she was competent to testify about how Chefs' Warehouse uses those systems on a corporate level.  Indeed, D'Anjou fails to cite any statement in the affidavit that he claims to be an out-of-court statement offered for the truth of the matter asserted.  See N.J.R.E. 801(c) and N.J.R.E. 803(c)(6).

Last, D'Anjou, citing to Rule 1:6-3, contends it was improper for Chefs' Warehouse to attach the affidavit to their reply brief as it violates due process.  We disagree.

The opposition containing the affidavit was in response to a cross-motion to dismiss.  In New Century Financial Services, Inc. v. Oughla, 437 N.J. Super. 299, (App Div. 2014), we addressed the submission of additional certifications in response to a cross-motion for summary judgment.  There, we upheld the trial

judge's discretion to consider additional certifications, emphasizing that such matters are left to the sound discretion of the trial judge.  Id. at 317.  Chefs' Warehouse was opposing D'Anjou's cross-motion, not merely replying in support of the arguments set forth in its OSC.  Based on the cross-motion, the court was well within its discretion to consider the documents that Chefs' Warehouse filed to rebut D'Anjou's claim that the signature on the arbitration agreement was not his.

To the extent we have not addressed any remaining arguments raised by defendant, we are satisfied they lack sufficient merit to warrant discussion in our opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2425-24