**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4787-16T2

U.S. BANK NATIONAL
ASSOCIATION, 4787-16T2 AS
INDENTURE TRUSTEE ON
BEHALF OF AND WITH
RESPECT TO AJAX MORTGAGE
LOAN TRUST 2016-C,
MORTGAGE-BACKED NOTES,
SERIES 2016-C,

      Plaintiff-Respondent,

v.

WILLIAM J. COLEMAN and
MARILYN L. COLEMAN f/k/a
MARILYN L. ROHREY,

      Defendants-Appellants,

and

WELLS FARGO BANK,

      Defendant.
_____

Submitted April 11, 2018 – Decided  October 1, 2018

Before Judges Fuentes and Suter.

On appeal from Superior Court of New Jersey, Chancery Division, Morris County, Docket No. F-018337-15.

Ast & Schmidt, PC, attorneys for appellants (David A. Ast and Robert L. Schmidt, on the brief).

Pluese, Becker, & Saltzman, LLC, attorneys for respondent (Stuart H. West, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendants William J. and Marilyn L. Coleman appeal the June 1, 2017 final judgment of foreclosure. They primarily challenge two discovery orders entered on August 5, 2016 and an order granting summary judgment on August 15, 2016 that reformed their mortgage to include a parcel of property that included their residence. Defendants also appeal the October 31, 2016 order that denied reconsideration. We affirm the trial court's orders and entry of the final foreclosure judgment.

We relate the facts from the summary judgment motions viewed in a light most favorable to defendants. Defendants owned or had an interest in three tracks of land in Rockaway, New Jersey. Track one, comprised of lots twenty-five and twenty-six in tax block 40401, is a largely unimproved 14,001 square foot parcel that contains a driveway and an underground septic tank (the

driveway lot). Track two consists of lots six and twenty in the same tax block (track two). Defendants sold this parcel in 1998. Track three, comprised of lot thirty-six in the same tax block, is a 6700 square foot parcel with a house on it where defendants live, which fronts on a pond (the house lot). Defendants lease this parcel from Green Pond Corporation.

On July 19, 2005, defendant William Coleman signed a $932,000 forty-year adjustable rate note in favor of Washington Mutual Bank, F.A. (WaMu) (the 2005 note). On the same date, defendants secured the note by executing a mortgage to WaMu that listed two properties: the driveway lot and track two. The note and mortgage also listed the street address for the house lot.

This mortgage was the ninth in a series of mortgages since defendants obtained the parcels in 1994. The HUD-1 settlement statement from the 2005 loan origination file-shows proceeds from the 2005 note and mortgage were used to pay-off two earlier mortgages. One mortgage from August 16, 2002, was to Morgan Stanley Dean Witter Credit Corporation (Dean Witter) for $749,999 (the seventh mortgage) and the other from November 26, 2003, was to Discover Bank for 150,000 (eighth mortgage). Both of these mortgages identified the

3

house lot as the encumbered property.[1]  They did not list the driveway lot or track two as encumbered properties.

By 2009, defendants' note and mortgage were held by JP Morgan Chase Bank, N.A. (Chase), which had acquired WaMu's assets.  In early 2009, defendants and Chase entered into a loan modification that changed the 2005 loan's principal balance to $1,066,773.57 and also changed its interest rate.  This loan modification expressly identified both the house lot[2] and track two as encumbered, even though defendants sold track two in 1998.  Defendants defaulted on the mortgage loan in November 2009.

In May 2015, plaintiff, U.S. Bank National Association, as Indenture Trustee on behalf of and with respect to Ajax Mortgage Loan Trust 2016-C, Mortgage-Backed Notes, Series 2016-C, filed a foreclosure complaint against defendants seeking to foreclose defendants' interests in the house lot and the driveway lot.  Count five of the foreclosure complaint requested reformation of the 2005 mortgage to correct an error. Plaintiff wanted to reform the mortgage to add the house lot because only the driveway lot and track two were mentioned

---

[1]  The August 16, 2002 mortgage used a metes and bounds description of the house lot.

[2]  The reference is to "Lot thirty-six[], Block 40401."

A-4787-16T2

by the mortgage in the legal description of the mortgaged property. Defendants filed a contesting answer and the parties conducted discovery. They agreed to dismiss the third and fourth counts of the complaint.

Plaintiff filed a motion for summary judgment. Victoria Shkutnik, an authorized representative of plaintiff, certified based on her review of the records relating to the defendants' loan, and her "personal knowledge of how [the records] are kept and maintained," that plaintiff had possession of the 2005 note and that the mortgage was assigned to it. She certified that defendants defaulted on the mortgage in November 2009, and timely sent a notice of intention to foreclose. Further, plaintiff was "obliged to make all tax and property insurance payments" since the default.

Defendants opposed the summary judgment motion, claiming that only the driveway lot was encumbered because the house lot was subject to a land-lease. Defendants asserted the house lot was "never offered as collateral to the lender in connection with this mortgage refinance."

The court granted plaintiff's motion for summary judgment on counts one and two of the foreclosure complaint, striking defendants' answer on those counts. The court found "the elements of foreclosure for the plaintiff to succeed are all there. The documents are genuine, there's been a default and the plaintiff

has standing . . . ." However, the court denied the summary judgment motion on count five of the complaint without prejudice, saying "[t]he only remaining issue is did the parties intend for the mortgage to cover [the house lot]." The court noted that "logic suggests they must have" but declined to resolve the issue that day "particularly in the face of Mr. Coleman's certification that says he never intended that lot to be included."

The parties conducted additional discovery, including a deposition of plaintiff's representative Adam Simms and of defendant William Coleman. Plaintiff produced "all remaining documents contained in the origination file that were within [p]laintiff's possession." When defendants served a subpoena for an additional deposition, plaintiff filed a motion to quash it because plaintiff's witness had been deposed a month earlier.

Plaintiff also filed a new motion for summary judgment, seeking judgment on count five, to reform the 2005 mortgage to include the house lot. Defendants opposed both motions, cross-moved to compel additional discovery and for an order to prevent plaintiff from introducing documents at trial that it had produced in discovery after the depositions. Defendants again claimed they had not offered the house lot as collateral for the WaMu loan, because defendants

6

were seeking financing to invest in their business, and not to refinance the existing primary mortgage.

On August 5, 2016, the court granted plaintiff's motion to quash the deposition of plaintiff. It stated:

> the present dispute is limited to whether [the house lot] had or should have been encumbered by the mortgage when the loan was originated. The lack of post-origination documentation is no reason to compel [p]laintiff to appear for another deposition. The only relevant documents are those which relate to the original loan.

On August 15, 2016, the trial court granted plaintiff's motion for summary judgment, reformed the mortgage to include the house lot and struck defendants' answer to count five of the complaint. The court did not find that there were material facts in dispute because it was "clear" that "the intention of the parties, certainly the bank, was to provide a loan for both the front lot and the back lot. That's consistent with all the documents that have been submitted." The trial court observed that "[no lender is] going to loan $900,000 to a driveway lot." The court found the "loan was to cover the back lot and the front lot."[3]

---

[3] The "back and front lot" were references to the house lot in the back and driveway lot in the front.

A-4787-16T2

Defendants sought reconsideration claiming the court erred because a material dispute existed "as to the intent of the parties at the time of loan origination." They claimed the house lot was not offered as collateral because it was subject to a ground lease. They contended that Chase acquiesced to this when it modified the mortgage in 2009. Defendants were critical of the "unauthenticated" documents upon which plaintiff relied. They also claimed that documents were altered, the title policy was fraudulent and others were forged. Defendants assert there was a conspiracy of sorts between the broker and the title company to earn certain fees.

The court denied defendants' motion for reconsideration, finding that lease-hold mortgages were valid in general. It also had the authority to correct draftsmen mistakes "in equity" because the house lot was intended to be included in the mortgage. With respect to defendants' argument that they had new evidence, the court said that this "consist[ed] of speculation of conspiracies between the broker and title company, as well as allegations of forged signatures." The court "refuse[d] to entertain speculations unsupported by evidence."

With defendants' answer stricken by the summary judgment orders, the case proceeded as uncontested. See R. 4:64-1(c). A final judgment of

foreclosure in favor of plaintiff was entered on June 1, 2017, in the amount of $1,690,795.10.  This included a schedule of payments made by plaintiff for real estate taxes and insurance premiums on defendants' property in Rockaway.

On appeal, defendants argue the trial court applied the wrong standard when granting summary judgment because it did not draw inferences in favor of the non-moving party and relied on unauthenticated documents, such as an appraisal of the property, which should have been barred.  Defendants claim the trial judge erred by reforming the mortgage to include the house lot because plaintiff failed to show that there was mutual mistake.  Defendants assert there was a genuine issue of material fact about whether they intended to grant a mortgage on the house lot.  They also argue that when they modified the loan, Chase acquiesced in the terms of the original mortgage.  We find no merit in any of these issues.

We review the trial judge's order that granted summary judgment and reformed the mortgage under a de novo standard of review.  Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).  The question is whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact, or whether "the evidence is so one-sided that one party must prevail as a matter of

law."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

We first address the order that reformed the mortgage to include the house lot.  "For a court to grant reformation there must be 'clear and convincing proof' that the contract in its reformed, and not original, form is the one that the contracting parties understood and meant it to be."  Central State Bank v. Hudik-Ross Co., 164 N.J. Super. 317, 323 (App. Div. 1978).  "The traditional grounds justifying reformation of an instrument are either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other."  Dugan Constr. Co., Inc. v. N.J. Tpk. Auth., 398 N.J. Super. 229, 242-243 (App. Div. 2008).  "Reformation predicated upon mutual mistake requires that both parties are in agreement at the time they attempt to reduce their understanding to writing, and that the writing fails to express that understanding correctly."  St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571, 579 (1982).

Defendants contend they did not intend to mortgage the house lot.  They argue that plaintiff should not have been permitted to rely on unauthenticated documents that were produced after the first summary judgment motion.  They

claim there was some type of conspiracy between the broker they used and the title company, all apparently to generate fees. We have carefully reviewed the record here and defendants have not presented any evidence to support or corroborate these contentions.

We agree with the trial judge that the 2005 mortgage should be reformed to include the house lot. The house lot had been mortgaged just a few years earlier under mortgages seven and eight for a combined amount of $899,999, which was very close in amount to the 2005 mortgage. There was no evidence presented by defendants that the unimproved driveway lot was comparable collateral to the house lot. Also, virtually every one of the mortgages from the time the property vested with defendants[1] in 1994 to the time of the 2005 mortgage included the house lot either by express reference to lot thirty-six or through a metes and bounds description for the house lot.

The 2005 mortgage included track two as one of the mortgaged properties. This showed unquestionably that both parties made a mistake on the 2005 mortgage because defendants sold this property in 1998. Defendants could not have intended in good faith to have included it in the 2005 mortgage.

Defendants do not contest that the 2005 mortgage paid off two prior mortgages or that both of those mortgages encumbered the house lot. When the

2005 mortgage did not list the house lot, but only the driveway lot and a lot defendants did not own, the effect was to unencumber the house lot with little or no real consideration for the bank in exchange. Again, assuming good faith on the part of defendants, we cannot presume that either the bank or defendants intended this mutually mistaken result.

Defendants contend the bank could not mortgage a leased property, but this is not supported by the 2005 mortgage. It provided that "[i]f this Security Instrument is on a leasehold, borrower shall comply with all the provisions of the lease."

We do not agree with defendants that the court improperly relied on unauthenticated documents provided in the second summary judgment motion. The bank representative certified, based on her personal knowledge about the records, including the loan origination file, that they were maintained by plaintiff in the course of its regularly conducted business. The certification complied with N.J.R.E. 803(c) (6). See New Century Fin. Servs., Inc. v. Oughla, 437 N.J. Super. 299, 326 (App. Div. 2014) (citing State v. Martorelli, 136 N.J. Super. 449, 453 (App. Div. 1975). ("There is no requirement that the foundation witness [certifying that a record is a business record] possess any personal knowledge of the act or event recorded.")).

Defendants were served with the loan origination file as part of the original discovery. That included the loan application where defendants noted the two prior mortgages on the house lot and the HUD-1, showing that those prior mortgages were paid off.

There was no abuse of discretion by the court in denying plaintiff's request to compel discovery and in quashing the subpoena. See State in Interest of A.B., 219 N.J. 542, 554 (2014) (providing that "appellate review of a trial court's discovery order is governed by the abuse of discretion standard."). The parties had already deposed a representative of the plaintiff and the issues were the same. Much of the reliance was on recorded documents to which defendants were signatories and had knowledge.

Defendants also appeal the final judgment of foreclosure. They raise no legal issues regarding the foreclosure judgment aside from the reformation of the mortgage that we already have addressed. Thus, we also affirm entry of the final judgment of foreclosure.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4787-16T2