**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1689-17T2

DAWN O'CONNELL,

    Plaintiff-Appellant,

v.

GERARD O'CONNELL,

    Defendant-Respondent.

_____

Argued December 5, 2018 – Decided August 2, 2019

Before Judges Fuentes, Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1541-13.

Joseph J. Fritzen argued the cause for appellant.

Steven J. Martino argued the cause for respondent (Iacullo Martino LLC, attorneys; Lynne Mary Machtemes, on the brief).

PER CURIAM

Plaintiff Dawn O'Connell appeals from a series of post-judgment orders regarding the suspension and termination of alimony due from her ex-husband, defendant Gerard O'Connell. Because the record on these motions makes clear plaintiff was denied basic due process in the court's suspension and ultimate termination of her alimony, we reverse the orders and remand to another judge for further proceedings consistent with this opinion.

The parties were married in 1994 and divorced in 2014. Their two children were sixteen and eighteen when the divorce judgment was entered. In their marital settlement agreement incorporated in the judgment, they agreed defendant would pay limited duration alimony for seventeen-and-a-half years. Defendant was to pay $43,200 per year in monthly installments until June 30, 2021, when his payment would increase over $3000 annually for the remainder of the term. The agreement further provided defendant's alimony obligation "may be reduced or terminated pursuant to the cases of Gayet v. Gayet and Garlinger v. Garlinger" in the event plaintiff "is deemed to be in a relationship tantamount to marriage or in a relationship with an unrelated individual with financial interdependence."

In exchange for a reduction in the amount of alimony, defendant agreed to assume responsibility for the children's college educations. Defendant was

further responsible to pay $200 a month in child support, the parties having agreed to a downward modification from what the Child Support Guidelines would require.

In October 2016, defendant filed a pro se motion to terminate his alimony based on plaintiff's cohabitation. Relying largely on plaintiff's social media postings and information from the parties' children and others, defendant alleged plaintiff had become engaged and resigned from her teaching position; was traveling extensively and living with her fiancé; and that both she and the parties' children were enrolled in his health insurance plan.

Plaintiff opposed the motion, arguing that termination of her alimony was, "at best, premature." Plaintiff admitted she had resigned from her teaching job and made no secret of her recent engagement. She further admitted traveling with her fiancé and spending time with him in his new home. She averred, however, that she still rented her own home and maintained her own financial obligations, "liv[ing] off savings and spousal support." While stating she certainly hoped she and her fiancé would marry, they had no immediate plans to do so and had no "shared bank accounts, credit cards, mortgages or real estate, or anything that married couples typically share." Plaintiff cross-moved to, among other things, have defendant assume the children's health insurance and

to recalculate child support in light of changed circumstances, including "any reduction or elimination of alimony and the parties' current income."

Approximately three months after the motions were filed and without hearing oral argument, the court entered the order of February 10, 2017, suspending alimony effective November 18, 2016, and vacating any arrears. The judge wrote on the order that "[i]n the event there are no applications filed asking the Court to reconsider this decision, the Court will accept a letter request to issue an amended order that terminates alimony & will then allow defendant to cancel any insurance policies designed to secure alimony."

No reasons are provided for that relief, but in denying plaintiff's application to review child support, the judge wrote:

> [t]he plaintiff is voluntarily unemployed, having retired at the age of 52. Her failure to offer any explanation for such an early retirement is strong evidence that her finances are now interwoven with those of her fiancé. Her claim that she is living off spousal support and savings is not credible and is belied by a cursory review of the moving papers.

In the section of the order denying plaintiff's request for counsel fees, the judge wrote: "[p]laintiff's failure to offer an explanation for her early retirement &/or to rebut the multiple items of proof relating to cohabitation & financial

4

intermingling involving the plaintiff & her fiancé are strongly suggestive of a finding that she is proceeding in bad faith on these issues."

We interrupt our recounting of the procedural history to note the utter lack of support for entry of this order. First, both parties requested oral argument. Motions in family actions are governed by Rule 1:6-2 as much as Rule 5:5-4. While the court has discretion as to the mode and scheduling of the disposition of motions, Rule 5:5-4(a) provides in exercising that discretion, "the court shall ordinarily grant requests for oral argument on substantive . . . motions." Rule 1:6-2(d) is blunter; it provides the request for oral argument on such motions "shall be granted as of right." See Filippone v. Lee, 304 N.J. Super. 301, 306, (App. Div. 1997) (terming a dispute as to emancipation "obviously a substantive motion that the parties should have been allowed to argue orally as a matter both of due process and the appearance of due process").

Even more concerning, the judge resolved contested issues of material fact on the basis of conflicting certifications, contrary to legions of cases expressly prohibiting the practice. See, e.g., Conforti v. Guliadis, 128 N.J. 318, 321-23 (1992). The judge improperly determined plaintiff was "not credible" without hearing her testify. See Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995). He found her failure "to rebut the multiple items of proof" defendant

5

presented as to her cohabitation was "strongly suggestive of a finding that she [was] proceeding in bad faith," apparently overlooking the vast majority of defendant's "proofs" on the motion were rank hearsay, inadmissible in court. See New Century Fin. Servs., Inc. v. Oughla, 437 N.J. Super. 299, 317 (App. Div. 2014) ("Hearsay may only be considered if admissible pursuant to an exception to the hearsay rule.").

Shortly after receipt of the order, defendant submitted a letter to the court requesting entry of an amended order permanently terminating alimony. The same day, plaintiff's counsel sent a reconsideration motion to the court for filing seeking discovery and a plenary hearing. The day after the reconsideration motion was filed, the judge entered the order of March 7, 2017, terminating defendant's alimony obligation. A week later, the court vacated the order nunc pro tunc.

In her certification in support of her motion for reconsideration, plaintiff continued to assert that defendant's motion to terminate alimony was premature, and there was no proof of "financial interdependence" or a relationship "tantamount to marriage." She explained she did not retire from her job based on a promise of support from her fiancé but because of a number of "ailments" affecting her ability to work. Further, she claimed defendant moved to terminate

6

her alimony less than two weeks after her fiancé moved into a new home. Although "respect[ing] the decision" of the court finding the facts alleged by defendant sufficient to warrant the suspension of alimony, plaintiff noted the parties' agreement provided for the possibility of reduction as well as termination of alimony in the event of cohabitation. She argued nothing in the parties' agreement entitled defendant "to a summary decision to terminate alimony on his request after a period of cohabitation of less than two (2) months" and that the court could decide after a plenary hearing "that a reduction of alimony, rather than suspension or termination, is fair to both parties."

In that regard, plaintiff acknowledged she had to give up her apartment after the suspension of her alimony and was then "living in the home owned by [her] fiancé." While admitting she did not contribute to the mortgage, plaintiff asserted she still had her "own bills and debts which [she was] trying to manage despite [her] unemployment and the suspension of [her] alimony." Plaintiff also averred she was paying expenses for the children she could no longer afford and renewed her request for recalculation of child support and for defendant to assume responsibility for the children's health insurance.

Defendant countered that plaintiff had offered no justification to revisit alimony or child support. Defendant opposed oral argument, asserting "plaintiff

7

and her counsel list multiple case laws which are irrelevant to the court's findings" and claimed plaintiff's admission that she was living with her fiancé negated any problems with his proofs on the motion to terminate alimony.

Again without hearing oral argument, the judge decided the motion by way of an order entered April 18, 2017, granting, in part, plaintiff's request for reconsideration. The judge granted the parties leave to engage in discovery "limited to issues relevant to the suspension or termination of alimony," and provided that after such discovery was complete, "either party [was] free to file a motion with the Court & if legally & factually supported, to ask the Court to schedule a plenary hearing." The court further stated in the order "[w]hile it is difficult to comprehend how a party who is engaged & lives with their fiancé, is not involved in a relationship tantamount to marriage, alimony at this time is suspended & not terminated."

The judge denied plaintiff's request that any alimony arrearage predating the court's suspension of alimony be reinstated, noting "[d]efendant now has a credit of $12,383.22 that shall remain," and denied her application to review child support without prejudice. The judge wrote on the order that "plaintiff's application is bereft of details as to her voluntary decision to retire," and that she "resort[ed] to unverified statements about alleged medical issues with no

reference to medical reports or physician certifications, & no explanation as to why she is not receiving SSD." The judge also denied plaintiff's motion to compel defendant to assume health coverage for the children, based on "plaintiff's failure to produce one iota of competent evidence to explain why she retired & gave up the coverage she agreed to maintain." The judge added, "[w]hile not dispositive, the Court does note that plaintiff lives with her fiancé and her fiancé now provides medical coverage to the adult children."

Several months later, probation closed the parties' child support account. Plaintiff certified she could not obtain proof from her daughter that she remained enrolled in college as her daughter was "not currently speaking to [her]" even though plaintiff continued to pay some of her expenses. Plaintiff claimed defendant refused to sign a consent order for its restoration, forcing plaintiff to file a motion to have the account reinstated. Defendant opposed the motion in late September 2017, claiming no one asked him to sign a consent order and cross-moved to limit restoration of child support to the parties' son. Defendant argued the parties' daughter would soon graduate from college and because she does not communicate with plaintiff, "does not benefit from the support that the plaintiff receives for her."

Defendant also wrote to the judge at about the same time "to resolve the Order signed by you on April 18, 2017." Defendant complained about plaintiff's response to certain of his discovery requests, especially her refusal to provide financial information of her fiancé. Defendant wrote that it was "impossible for [him] to prove that the plaintiff is being supported by her fiancé without the requested documents to show how her bills are being paid and where she is deriving the funds necessary to live from." That letter was not certified and was not filed as a part of defendant's opposition or cross-motion.

In his letter, defendant claimed it had "been over <u>160 days</u> since the Court gave both parties permission for gathering financial information to be used for a plenary hearing" which neither had sought. He requested "that since the Plaintiff acknowledges that she is living with her fiancé and that she must be being supported financially, that the Order to suspend alimony be made permanent."

Plaintiff filed a reply certification responding to defendant's "cross-motion to terminate . . . alimony." Plaintiff reminded the court that defendant obligated himself to pay alimony for seventeen-and-a-half years. Asserting "[t]he court ordered discovery and a hearing pursuant to the terms" of the parties' agreement, and although no hearing had been scheduled and defendant had not

filed a motion regarding his "complaints about the status of discovery," defendant "has now filed a motion seeking to terminate his support obligation."

Plaintiff certified that it did not appear she would be marrying her fiancé and could well be "moving out of his house in the immediate future," and that termination of her "right to alimony would pose a real and extreme hardship." She accordingly asked that the court "deny the cross motion to terminate . . . alimony in a summary manner" and reinstate defendant's child support obligation as requested in her motion.

Although plaintiff requested oral argument in the event her motion was opposed, the court instead decided another substantive motion of the parties without oral argument. In the October 27, 2017 order, the court reinstated child support as to the parties' son, but determined "it would not be equitable to require the defendant to pay child support to the plaintiff for the benefit" of the parties' daughter, given she was "no longer speaking with or living with the plaintiff." A handwritten note at the bottom of the order provided: "[f]urther, in light of plaintiff's failure to respond in good faith to defendant's discovery demands & given that she lives with & has some level of intertwined finances with her fiancé, the 4/18/17 order is amended to terminate alimony. Any life insurance obligation . . . is also terminated." This appeal followed.

11

After the matter was fully briefed and scheduled for argument; indeed, the day before argument, we received from the trial judge "[p]ursuant to <u>R.</u> 2:5-6(c) . . . for the purpose of supplementing the record," an amended order filed several days before on November 30, 2018. The order provides:

1. The provision of the Court's Order of October 27, 2017 that terminates Defendant's alimony obligation is hereby modified to indicate that the obligation to pay alimony and maintain life insurance is suspended, not terminated. The suspension is and was due to Plaintiff s failure at the time in the Court's mind to respond in full to the discovery demands served by the Defendant that were authorized by the Court's Order of April 18, 2017.

2. Plaintiff has the right through counsel by way of motion and/or letter correspondence to ask the Court to reinstate alimony (or schedule a hearing regarding same) in the event the discovery at issue was provided and/or she is no longer cohabitating with the gentlemen who at the time was her fiancé.

3. As to the portion of the Order that lowered the Defendant's monthly child support obligation from $200.00 per month to $100.00[1] per month, the Court recognizes that it failed to account for the fact that its Order terminated the alimony payments being paid by the Defendant to the Plaintiff. Further, it is likely that the Court's approach in simply halving the payment in light of one of the two children (who was almost 22 years old at the time) no longer living with the Plaintiff was an overly mechanistic approach. As a result, the Court will refer the parties to the Post-Judgment Early Settlement Panel for the purpose of assisting them in more equitably arriving at an appropriate child support

payment. If they are unsuccessful at resolving this issue, then the matter will be referred to a Family Part judge for resolution. It is noted that Defendant has a credit of $12,133.22 with regard to his child support account (CS91105077A), so to the extent any upward adjustment needs to be made to child support, those monies should be more than sufficient to account for same.

---

[1] In their PSA, the parties agreed to deviate from the Child Support Guidelines.

We reject plaintiff's argument that the November 30, 2018 order moots the appeal. That order is a nullity. The filing of a notice of appeal invokes this court's jurisdiction to supervise and control the matters on appeal and deprives the trial court of jurisdiction except as preserved by rule or statute. See R. 2:9-1; In re Plainfield-Union Water Co., 14 N.J. 296, 302-03 (1954); Mandel, N.J. Appellate Practice, § 5:1 (2019). Simply stated, the trial court judge was without jurisdiction to enter an order inconsistent with preserving the issues on appeal for decision by this court. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 376, 391-93 (1995). Rule 2:5-6(c), permitting amplification by the judge of any statement of reasons previously made following the filing of an interlocutory appeal, is obviously inapplicable as the court's October 27, 2017 order terminating plaintiff's alimony constituted a final order for purposes of appeal. See Ricci v. Ricci, 448 N.J. Super. 546, 565 (App.

Div. 2017). Supplementation pursuant to <u>Rule</u> 2:5-1(b) would likewise be inappropriate as the time for amplification had long since passed.

Moreover, the November 30, 2018 order is clearly not an amplification or supplementation of the reasons given for the court's October 27, 2017 order; rather, it improperly purports to change the order's express terms. Motions to the trial court for reconsideration or to amend or modify a judgment following the filing of a notice of appeal are not permitted. <u>See</u> <u>Kiernan v. Kiernan</u>, 355 N.J. Super. 89, 92 (App. Div. 2002) (finding inappropriate broad challenges to the judgment on a motion for reconsideration while the judgment is on appeal). Sua sponte modifications of orders beyond the scope of <u>Rule</u> 1:13-1 to correct clerical errors are similarly inappropriate.[1] <u>See</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 1:13-1 (2019) ("This rule clearly provides no authority for the trial court's reconsideration of its own orders and judgments.").

Although we think it obvious the orders directing the suspension and termination of alimony cannot stand on their own terms as they were entered on contested facts without a plenary hearing, <u>see</u> <u>Tancredi v. Tancredi</u>, 101 N.J.

---

[1] In response to our inquiry of counsel at oral argument as to whether they were aware of the genesis of the order, we were advised it followed shortly on a casual inquiry by the judge of one of them, while in the courthouse on another matter, about the status of the case. Counsel represented he told the judge the parties were due to appear for oral argument in the Appellate Division within a week.

Super. 259, 262-63 (App. Div. 1968), the trial judge's subsequent explanation that suspension of alimony was entered as a discovery sanction, in the absence of any motion, is also troubling. Considered solely as a discovery sanction, the order is unjust, compelling our intervention. See Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 571 (App. Div. 2000).

We reject defendant's arguments that plaintiff's admissions on the motion for reconsideration cured any proof problems on his initial motion and that plaintiff's failure to request a plenary hearing following discovery in accordance with the court's April 18, 2017 order compel affirmance of the court's October 27, 2017 order permanently terminating plaintiff's alimony. The lack of due process accorded plaintiff by the court in disposing of this series of motions compels the reversal of the ensuing orders. See Fusco v. Fusco, 186 N.J. Super. 321, 328-29 (App. Div. 1982). We can have no confidence in their validity given the basic unfairness of the proceedings.

We acknowledge plaintiff may have made decisions and taken actions that might fairly result in the modification or termination of her alimony in accordance with the standards the parties chose to incorporate into their agreement. See Gayet v. Gayet, 92 N.J. 149 (1983); Garlinger v. Garlinger, 137

15

N.J. Super. 56 (App. Div. 1975). The record, however, does not permit such a conclusion at this juncture.

We reverse the orders of February 10, 2017; April 18, 2017; and October 27, 2017, and vacate the order of November 30, 2018. We remand the matter to a different judge and request that he or she convene a case management conference at the judge's earliest convenience to establish a schedule to address issues of alimony and child support. We do not retain jurisdiction.

Reversed and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION