**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2409-18T2

MTGLQ INVESTORS LP,

     Plaintiff-Respondent,

v.

EILEEN BRYLINSKI, MR.
BRYLINSKI, unknown spouse
of EILEEN BRYLINSKI, and
FRANK J. BRYLINSKI,

     Defendants-Appellants.

_____

     Submitted December 16, 2019 – Decided July 14, 2020

     Before Judges Ostrer and Vernoia.

     On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. F-007226-17.

     Eileen Brylinski and Frank Brylinski, appellants pro se.

     Stern & Eisenberg PC, attorneys for respondent (Salvatore Carollo, on the brief).

PER CURIAM

Under the Fair Foreclosure Act (FFA), a mortgagee must serve a notice of intention to foreclose (NOI) before filing a foreclosure action. N.J.S.A. 2A:50-56. In this foreclosure appeal, plaintiff claims its predecessor sent the required NOI. The sole issue before us is an evidentiary one: did the successor mortgagee prove that its predecessor sent the required notice? Plaintiff invokes the business record exception to the hearsay rule, N.J.R.E. 803(c)(6), to utilize a document inherited from the predecessor's files. We conclude that its reliance is misplaced, as plaintiff failed to lay a sufficient foundation to establish the document's admissibility under the rule. Therefore, we vacate summary judgment on plaintiff's foreclosure complaint and remand.

I.

In 2007, defendant Eileen Brylinski executed a 30-year, non-purchase money mortgage with Jersey Mortgage Company, along with a mortgage note of $417,000.[1] About two years later, Mortgage Electronic Registration Systems, Inc. (MERS), acting as nominee for Jersey Mortgage Company, assigned the mortgage to BAC Home Loans Servicing, LP. Another two years or so passed,

---

[1] For convenience, we refer to Ms. Brylinski and her co-defendant-husband by their first names, and mean no disrespect in doing so.

A-2409-18T2

and MERS assigned the mortgage to Bank of America, N.A. Both assignments were properly recorded.

On June 8, 2012, Bank of America evidently prepared an NOI addressed to Eileen. The notice includes the date, below which it states, "Sent via First Class and Certified Mail." Below that, it states again, "Certified Mail," with a tracking number, and finally, "Return Receipt Requested." (Emphasis in original). Whether that statement was true, that is, whether BOA actually sent the notice and did so by certified mail, return receipt requested, is the crux of this appeal. There are no contemporaneous U.S. Postal Service records or other documentary proof of mailing.

Thereafter, the mortgage was assigned and properly recorded twice more. Ultimately, in September 2016, the mortgage was assigned to plaintiff MTGLQ Investors, L.P.

On March 22, 2017, plaintiff filed its foreclosure action against defendants. In their answer, defendants asserted, as an affirmative defense, that plaintiff did not comply with the FFA.

Eventually, plaintiff moved for summary judgment, and to strike defendants' answer. Plaintiff attached to the motion for summary judgment a certification from Teresa Hubner, a "Litigation Foreclosure Specialist" at New

Penn Financial LLC d/b/a Shellpoint Mortgage Servicing, plaintiff's loan servicer. She asserted that the "certification [is] based on [her] personal knowledge of the facts contained herein. [Her] personal knowledge [was] based on [her] review of the business records described below."

Additionally, she certified,

> 2. In the regular performance of my job functions at New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, I am familiar with the business records maintained by Shellpoint for the purpose of servicing mortgage loans, collecting payments and pursuing delinquencies (the "business records"). These business records include electronic data compilations and imaged documents pertaining to the loans serviced by Shellpoint. These imaged documents include, but are not limited to, the true copies of the loan documents referenced herein.
>
> 3. Based on my training and my general knowledge of the processes by which they are created and maintained, the business records were made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of the business activity regularly conducted by Shellpoint. It is the regular practice of [p]laintiff's mortgage loan servicers to make and update these business records.

Lastly, she stated, "On June 8, 2012, a Notice of Intent to Foreclose was sent in accordance with The Fair Foreclosure Act." She attached the Bank of America NOI.

4

Defendants asserted that Hubner's certification was "fraudulent," noting that the NOI pre-dated Shellpoint's involvement. In other words, they contested Hubner's knowledge that the NOI was sent. They raised other arguments opposing summary judgment, which are not at issue on appeal.

On January 2, 2018, the trial court found that the NOI was sent in compliance with the FFA. The court held:

> (i) Plaintiff's predecessor in interest notified defendant of acceleration of payments on June 8, 2012. (ii) The NOI complied with the FFA, it's [sic] age is irrelevant as long as it complied with the Act and is not fraudulent. (iii) Plaintiff demonstrates its valid assignment of the mortgage, which in itself provides standing. Plaintiff also certifies possession of the note, which defendant does not deny signing. (iv) The certification of an individual as to review of documents must necessarily predate the filing of the complaint with which they are to be submitted. (v) Nothing is fraudulent about Ms. Hubner's certification . . . .

As plaintiff established all other elements of its claim, the court granted it summary judgment, ordered stricken defendants' answer, entered judgment, and remanded the matter to the Office of Foreclosure. The court subsequently denied another motion by defendants, challenging the amount due.

On December 24, 2018, the trial court issued final judgment in the sum of $761,950.19, plus $7,500 in counsel fees, and costs. On the same day, the trial court issued a writ of execution, commanding the Middlesex County Sheriff to

A-2409-18T2

sell the property. Plaintiff asserted it bought the property for $100 at the sheriff's sale on March 27, 2019.

On appeal, defendants renew their argument that plaintiff failed to present competent proof that its predecessor sent the NOI to them in compliance with the FFA. They note the absence of a return receipt, or United States Postal Service tracking documentation.

II.

A trial court will grant summary judgment when there exists no "genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We review the trial court's order de novo, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Services, 204 N.J. 320, 330 (2010). However, we review evidentiary rulings preliminary to summary judgment determinations for an abuse of discretion. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384–85 (2010). But, "'[w]hen the trial court fails to apply the proper test in analyzing the admissibility of proffered evidence,' our review is de novo." Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012) (alteration in original) (quoting Pressler & Verniero, Current N.J. Court Rules, comment 4.6 on R. 2:10-2 (2012)).

The sole issue on appeal is whether plaintiff presented competent proof on its summary judgment motion that it sent the NOI as the FFA requires. Our Supreme Court has recognized that "[t]he notice of intention [to foreclose] is a central component of the FFA, serving the important legislative objective of providing timely and clear notice to homeowners that immediate action is necessary to forestall foreclosure." US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 470 (2012). The FFA requires that a "[n]otice of intention to [foreclose] . . . shall be in writing . . . sent to the debtor by registered or certified mail, return receipt requested, at the debtor's last known address, and, if different, to the address of the property which is the subject of the residential mortgage." N.J.S.A. 2A:50-56(b). Mailing or in person delivery effectuates the notice. Ibid. The remedy for non-compliance with the notice requirement is left to the trial court. Guillaume, 209 N.J. at 476.

MTGLQ did not send its own NOI after purchasing defendants' mortgage. It relies on the one its predecessor, Bank of America, prepared almost five years before MTGLQ filed its complaint.[2] Plaintiff offers no certification of mailing by a Bank of America employee; a tracking document from the U.S. Postal

---

[2] Effective August 1, 2019, a mortgagee cannot rely on an NOI that was sent more than 180 days before the complaint is filed. See N.J.S.A. 2A:50-56(g); L. 2019, c. 69 § 1, eff. Aug. 1, 2019.

Service, coinciding with the certified mail number; or a return receipt, signed by either defendant. To prove the NOI was sent, plaintiff necessarily relies on the statement on the copy of the notice itself, "Sent Via First Class and Certified Mail . . . Return Receipt Requested." To offer that out-of-court statement for the truth of the matter asserted, plaintiff relies on the business record exception to the hearsay rule. N.J.R.E. 803(c)(6). As the proponent of hearsay, plaintiff bears the burden to establish its admissibility. State v. Stubbs, 433 N.J. Super. 273, 285-86 (App. Div. 2013).

A statement in "records of regularly conducted activity" may be offered into evidence for the truth of the matter asserted if the statement is

> contained in a writing or other record of acts, events, conditions . . . made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.

> [N.J.R.E. 803(c)(6).]

See State v. Sweet, 195 N.J. 357, 370 (2008) (identifying the three prerequisites for a statement's admission: "made in the regular course of business . . . prepared within a short time of the act, condition or event being described" and "the

8

source of the information and the method and circumstances of the preparation of the writing must justify allowing it into evidence") (quoting <u>State v. Matulewicz</u>, 101 N.J. 27, 29 (1985)).

The business record exception is intended "to 'broaden the area of admissibility of relevant evidence where there is necessity and sufficient guarantee of trustworthiness.'" <u>Rosen</u>, 425 N.J. Super. at 403 (quoting <u>Liptak v. Rite Aid, Inc.</u>, 289 N.J. Super. 199, 219 (App. Div. 1996)). The exception "was founded upon the theory 'that records which are properly shown to have been kept as required normally possess a circumstantial probability of trustworthiness, and therefore ought to be received in evidence.'" <u>Matulewicz</u>, 101 N.J. at 29-30 (quoting <u>Mahoney v. Minsky</u>, 39 N.J. 208, 218 (1963)).

Plaintiff was not required to present a certification from a Bank of America employee to establish the prerequisites of the business record exception (although that certainly would have sufficed). We have followed the interpretation of the federal business record exception, that "documents may properly be admitted 'as business records even though they are the records of a business entity other than one of the parties, and even though the foundation for their receipt is laid by a witness who is not an employee of the entity that . . . prepared them.'" <u>Hahnemann Univ. Hosp. v. Dudnick</u>, 292 N.J. Super. 11, 17

9

(App. Div. 1996) (quoting Saks Int'l, Inc. v. M/V "Export Champion", 817 F.2d 1011, 1013 (2d Cir. 1987)).  Therefore, "the foundation witness generally is not required to have personal knowledge of the facts contained in the record."  Id. at 17-18; see also New Century Fin. Servs., Inc. v. Oughla, 437 N.J. Super. 299, 326 (App. Div. 2014) (stating "[t]here is no requirement that the foundation witness possess any personal knowledge of the act or event recorded").  "The principal precondition to admission of documents as business records . . . is that the records have sufficient indicia of trustworthiness to be considered reliable."  Saks Int'l, 817 F.2d at 1013.

Nonetheless, a party who seeks to introduce as a business record a document created by a third-party must "satisfactorily attest to the circumstances under which it acquired the documents on which it relies. . . ."  Id. at 323.  The foundation witness must also disclose the source of his or her knowledge of the facts stated.  Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 599-600 (App. Div. 2011).  In Oughla, we rejected the defendant's argument that the plaintiff, as transferee of credit card debt, was required to present separate affidavits from its predecessors authenticating each assignment.  437 N.J. Super. at 322-23.  It sufficed that a managing director of the plaintiff certified that he was familiar with his company's records and how they were maintained; he

A-2409-18T2

participated in the acquisition of the account; and, he attached the bill of sale and assignment, which referenced the purchased account, and documentation of a prior assignment. Ibid.

We also rejected the defendant's challenge to the admissibility of his account statements, which were based on the records of the plaintiffs' predecessors. Id. at 328. The plaintiffs satisfied the business record exception by presenting certifications of employees "having personal knowledge of the books and records of [the] plaintiffs and the transactions whereby [the] plaintiffs acquired the charged-off debts on which they sued." Id. at 327. They also "certified that they acquired the account statements attached to their certifications as part of the purchase of the charged-off debts" and the "account statements were true copies and reflected amounts due their predecessors as of the final billing cycle." Ibid.

In Garden State Bank v. Graef, 341 N.J. Super. 241 (App. Div. 2001), involving an action on a commercial loan, the defendant challenged evidence of the amount due. We affirmed the trial court's reliance on a certification of the plaintiff-successor-bank's employee, who stated that the predecessor bank ran an accounting of the balance due before the note was transferred, and the balance due was then transferred to the successor's accounting system. We held the

11

employee was "competent to lay a foundation for the records" of payments, and "his position render[ed] him 'sufficiently familiar with the record system used' and enable[d] him to 'establish that it was the regular practice of [the successor bank] to make the record.'" Id. at 245 (quoting Hahnemann, 292 N.J. Super. at 18).

The courts of other jurisdictions have grappled with how one establishes a foundation for admitting a third-party's business records. The federal courts generally require proof that the successor has integrated the third-party's document into its own records, and relies on its accuracy. The Eighth Circuit held in Brawner v. Allstate Indem. Co., 591 F.3d 984, 987 (8th Cir. 2010), that "a record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied") (citing cases). See also U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Jones, 925 F.3d 534, 537 (1st Cir. 2019) (noting that a third-party's documents have been admitted as business records, "without third-party testimony where the entries were 'intimately integrated' into the business records . . . or where the party that produced the business records 'relied on the [third-party] document and documents such as those[] in his business'"

(alterations in original and internal citations omitted)). The Second Circuit held that the proponent must show that it is its "regular practice to get information" from the third party. Saks Int'l, 817 F.2d at 1013.

As one court put it, "a record of which a firm takes custody is thereby 'made' by the firm within the meaning of the rule (and thus is admissible if all the other requirements are satisfied)." United States v. Adefehinti, 510 F.3d 319, 326 (D.C. Cir. 2007). On the other hand, federal courts have rejected documents as business records where "the later business did not 'use[] a procedure for verifying' such information, lacked a 'self-interest in assuring the accuracy of the outside information,'" or where the successor "sought admission of third-party statements made 'by a stranger to it' . . . ." Jones, 925 F.3d at 537-38 (alterations in original and internal citations omitted).

Some state courts apply the same factors. Noting that loan records were often transferred with the purchase of debt, the Connecticut Supreme Court recently stated that "the proponent does not have to lay a foundation concerning the preparation of the data it acquired but must simply show that these data became part of its own business record as part of a transaction in which the provider had a business duty to transmit accurate information." Jenzack Partners, LLC v. Stoneridge Assocs., LLC, 222 A.3d 950, 960 (Conn. 2020); see

also Ocwen Loan Servicing, LLC v. Malish, 109 N.E.3d 659, 666 (Ohio Ct. App. 2018) (business record of predecessor loan originator admissible where affidavit at summary judgment stage stated plaintiff "fully incorporated the business records of the prior servicer into its records," "relie[d] upon these records in the ordinary course of business," and plaintiff had used predecessor's servicing platform after acquiring the loan); cf. Bayview Loan Servicing LLC v. Wicker, 206 A.3d 474, 486 (Pa. 2019) (declining to adopt a per se rule of admission or exclusion of third-party business records, instead opting to defer to trial court's ability to determine "if the witness 'can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness.'" (citation omitted)).

We conclude, based on this authority, that an assignee of a debt may lay a foundation for introducing the inherited records of an assignor under N.J.R.E. 803(c)(6), without presenting a witness personally familiar with the assignor's method of creating and maintaining records. The proponent may be excused for lacking personal knowledge of how the third party created or maintained certain records, if the proponent establishes how it assumed control of the records, in other words, the circumstances of the records' acquisition; that the proponent integrated those third-party records into its own records; and the proponent

14

relied on their accuracy in the regular course of its business. The foundation witness must disclose the basis for his or her knowledge of those facts. Ultimately, any foundation must satisfy the Rule's requirement of trustworthiness. See N.J.R.E. 803(c)(6) (stating that a court may deny admissibility of a business record if "the source of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy").

Applying these principles, we are constrained to hold that Hubner's certification fell short of laying a foundation for admitting the Bank of America NOI as a business record under N.J.R.E. 803(c)(6). Although she documented the multiple assignments of the mortgage, Hubner did not address how the document came into Shellpoint's hands, or how records became integrated into Shellpoint's business records.

Hubner certified that the NOI, and other documents she referenced in her certification were included among "business records maintained by Shellpoint for the purpose of servicing mortgage loans, collecting payments and pursuing delinquencies." However, she did not expressly state that the Bank of America NOI was integrated into Shellpoint's own records. We may certainly infer that it was, but summary judgment practice requires that we draw all inferences in

the opponent's favor, not the movant's.  See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Furthermore, Hubner does not expressly state that Shellpoint relied on the accuracy of the predecessor's records.  Instead, she claimed that Shellpoint's "business records" – including the NOI – "were made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records."  She apparently refers to when Bank of America made the NOI, not when Shellpoint may have "made" it is as its own, in the sense discussed by the court in Adefehinti.  She relies only on her "training and . . . general knowledge of the processes by which they [were] created," but she does not explain how her training or "general knowledge" informed her of Bank of America's method of preparing NOIs over four years before plaintiff acquired the mortgage.

In sum, without evidence about Shellpoint's acquisition of Bank of America's records; that Shellpoint integrated Bank of America's records into its own system upon purchasing the mortgage, and that Shellpoint relied on the accuracy of Bank of America's records, or a separate certification from someone familiar with Bank of America's business record keeping processes independently establishing a foundation for admission of the record under

N.J.R.E. 806(c)(6), plaintiff failed to lay a foundation for admitting the Bank of America NOI.

We recognize that this is not a case of an NOI that failed to satisfy the requirements of the FFA, which would require the trial court to determine whether to dismiss plaintiff's complaint without prejudice, or enter some other remedy. See Guillaume, 209 N.J. at 476. Defendants do not argue before us that the NOI, if Bank of America actually sent it, did not comply. The issue is whether it was sent at all. If it was sent, then plaintiff deserved judgment in its favor. Therefore, we remand for the trial court to determine anew whether the NOI was sent. If Hubner or someone else can lay an adequate foundation for admissibility of the NOI, then the judgment need not be disturbed. See Stubbs, 433 N.J. Super. at 289 (remanding for a determination whether an adoptive admission was properly admitted as hearsay, and directing that if it was not, then a new trial should be ordered, but if it was, then reversal would be unwarranted).

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2409-18T2